In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-2787

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ANDREW A. CHAVIS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 03 CR 50028—**Philip G. Reinhard**, *Judge.*

_____

ARGUED SEPTEMBER 7, 2005—DECIDED NOVEMBER 9, 2005

_____

Before CUDAHY, MANION, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* A federal jury convicted Andrew
Chavis on charges of both conspiracy and possession of
crack cocaine with intent to distribute. Chavis appeals,
asserting that his conviction cannot stand because the
district court improperly admitted certain evidence and
failed to give a particular jury instruction. Chavis also
contends, and the government agrees, that he is entitled to
a limited remand in the wake of *United States v. Booker*,
125 S.Ct. 738 (2005). We affirm Chavis's conviction but order
a limited remand to the district court for a determination

pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).

## I.

In November 2002, the DEA began investigating illegal drug distribution in Rockford, Illinois. This investigation relied on Robert and Rosa Flemons, both of whom had pleaded guilty to dealing crack cocaine but had chosen to cooperate with the government. As part of the cooperation agreement, the DEA provided the Flemonses with money to make purchases from suspected drug dealers while the DEA monitored the transactions.

On November 14, 2002, Alex "Alley Cat" Thompson informed the Flemonses that he could supply them with crack cocaine. After consulting with DEA Agent Doug Hopkins and receiving marked money, the Flemonses arranged to purchase two ounces of crack on November 15. Although the transaction took place and was recorded by the DEA, Thompson was unable to deliver the full two ounces of crack. However, the Flemonses did purchase from Thompson five-eighths of an ounce of crack cocaine for $620.

Approximately a week later, on November 21, the DEA asked the Flemonses to arrange a second buy of crack cocaine from Thompson. Based on surveillance conducted during the first purchase, the DEA was able to locate Thompson's car at his residence. In anticipation of the second buy, the DEA began surveillance on the car in the hopes of identifying larger dealers connected to Thompson. After the Flemonses placed a call to Thompson for another purchase of drugs, Thompson drove his white Chrysler to the 700 block of Sixth Avenue.

After waiting in his car for several minutes, a second man, later identified as Frank Jefferson, came from the north side of the street and entered a parked maroon Buick. According to Jefferson's testimony at trial, he had been inside 718 Sixth Avenue, the residence of Chavis's girlfriend, getting crack cocaine from Chavis to give to Thompson. Thompson and Jefferson drove off in separate cars, but soon reconvened, with Jefferson giving Thompson the drugs at this time. The men again left separately, and each went to Capitol Cleaners, which the Flemonses owned. There, Thompson supplied the Flemonses with crack, while Jefferson stayed in his car.

Again, the Flemonses discovered that Thompson had not given them the bargained amount of crack, so the Flemonses gave him $750, less money than originally agreed upon. Upon discovery of the drug shortfall, Thompson called Jefferson to inform him of the problem. After the deal was completed, Thompson met with Jefferson, giving him the money received from the sale. Jefferson, in turn, gave the majority of this money to Chavis.

On November 22, the DEA decided to shut down the drug conspiracy. To that end, Hopkins instructed the Flemonses to set up one more drug deal with Thompson. Meanwhile, the local police continued surveillance on Thompson, who met and picked up Jefferson in his white Chrysler. At first, Jefferson had trouble reaching Chavis on Chavis's cell phone to tell him that he needed more crack. Jefferson then stopped by his own house and picked up money in case he had to buy the drugs from another source. Eventually, Jefferson connected with Chavis, who informed Jefferson that he had the necessary drugs for the deal. However, when Jefferson and Thompson drove to Chavis's girlfriend's house on Sixth Avenue, Chavis was not there. Jefferson

finally set up a meeting with Chavis in a liquor store parking lot near Capitol Cleaners to obtain the drugs.

Jefferson and Thompson reached the parking lot first, and the police continued to observe their activities, watching them through binoculars. After approximately twenty minutes, Chavis and his girlfriend, Sidra Moses, pulled up in Moses's Oldsmobile. Jefferson then left Thompson's Chrysler and entered the back seat of Moses's car. Detective Robert Veruchi, one of the local police assisting the DEA's surveillance, saw Chavis, sitting in the front passenger seat, appear to give something to Jefferson. After observing this apparent hand-off, the police then approached and surrounded the car, ordering the occupants out.

When Chavis left the front seat of the car, a cell phone and a pager dropped onto the ground. Chavis agreed to a police pat-down, which turned up $1,128 in Chavis's right front pocket and $3,525 in his left rear pocket. Police found on Jefferson a cell phone, crack cocaine, and $1,239 in cash. DEA Agent Hopkins also discovered a baggie containing crack cocaine on the floor of the car near where Jefferson had been sitting. While they were being taken into custody, Jefferson and Chavis turned on each other, each yelling to the other: "You set me up." Once they arrived at the police station, Chavis shouted to Moses: "Don't talk. Don't say nothing, baby. They got nothing." Chavis told the police that Jefferson had handed a bag of cocaine to him in the car, and that he (Chavis) threw it back at Jefferson just as the police came up. Chavis was subsequently released, while Jefferson began cooperating with the authorities, providing many of the facts and details above. The DEA also examined the money recovered from Chavis, discovering that Chavis

possessed 16 of the 19 bills that the Flemonses had used to purchase crack cocaine on November 21.

On April 22, 2003, a federal grand jury in the Northern District of Illinois indicted Chavis for: (1) conspiring with Alex Thompson and Frank Jefferson to possess with intent to distribute more than 50 grams of substances containing cocaine base on November 15; (2) distribution (with Thompson and Jefferson) of 26.2 grams of substances containing cocaine base on November 21; and (3) possession with intent to distribute more than 50 grams of substances containing cocaine base on November 22. Chavis was arrested on the day of his indictment. At the time of his arrest, Chavis had on his person $1,522 in cash, a small electronic scale, and an Illinois identification card.

At trial, Jefferson, local police, and DEA agents all testified about the drug ring and Chavis's involvement in it. Chavis attempted to exclude several pieces of evidence, including a prior conviction for possession of cocaine with intent to distribute, and the evidence found on Chavis during his April 22, 2003 arrest. The district court proceeded to analyze the disputed evidence pursuant to Fed.R.Evid. 404(b), concluding that the prior conviction was admissible as it was being used to show Chavis's intent rather than propensity. The district court also found that the evidence from Chavis's arrest satisfied Rule 404(b). At the end of trial, Chavis requested that the court give a buyer-seller instruction to the jury. The court refused, finding that no evidence supported such an instruction.

The jury convicted Chavis on the counts dealing with the November 15 and November 22 drug deals, but found him not guilty of the count relating to the November 21 deal. The district court sentenced Chavis to concurrent terms of 420 months' imprisonment. Chavis appeals.

## II.

On appeal, Chavis challenges the district court's admission of: (1) Chavis's 1997 conviction on a drug-related offense; (2) evidence found on Chavis when he was arrested in April of 2003; (3) Jefferson's testimony regarding his dealings with Chavis; and (4) the taped conversations of Thompson and Jefferson from the November 15 and November 21 drug deals with the Flemonses. Further, Chavis asserts that the district court erred in refusing a buyer-seller jury instruction. Finally, Chavis raises a *Booker* challenge to his sentence.

## A.

The first three of Chavis's four evidentiary challenges involve the application of Rule 404(b). Rule 404(b) prohibits the use of evidence of other bad acts to show that a defendant has a propensity to commit a crime and that he acted in accordance with that propensity on the occasion in question. *See United States v. Best*, 250 F.3d 1084, 1090 (7th Cir. 2001). Such evidence, however, can be admitted if it is offered for purposes other than showing propensity, such as to establish intent, knowledge, lack of mistake, motive, or opportunity. *See United States v. Puckett*, 405 F.3d 589, 596 (7th Cir. 2005); *see also United States v. Jones*, 389 F.3d 753, 756 (7th Cir. 2004). A four-part standard governs the admissibility of this type of evidence under Rule 404(b):

> (1) the evidence [must be] directed toward a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence [must] show[ ] that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evi-

dence [must be] sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence [must] not [be] substantially outweighed by the danger of unfair prejudice.

*Best*, 250 F.3d at 1090-91. As Chavis made timely objections, we review the district court's decision to admit the evidence under Rule 404(b) for an abuse of discretion. *See Puckett*, 405 F.3d at 595. Furthermore, "even erroneous evidentiary rulings will not be overturned if any resulting error was harmless." *United States v. Price*, 418 F.3d 771, 779 (7th Cir. 2005) (quoting *United States v. Farmer*, 924 F.2d 647, 654 (7th Cir. 1991)).

### 1.

Chavis first contends that the district court improperly admitted evidence relating to his 1997 conviction for possession of crack cocaine with intent to distribute. For a specific intent crime, like the ones charged in this case, intent is a required element of the offense, which the government must prove beyond a reasonable doubt. *See Best*, 250 F.3d at 1091. "We have repeatedly held that when a defendant is charged with a specific intent crime, the government may introduce evidence of other acts to prove intent." *Id.*; *see also Jones*, 389 F.3d at 756; *United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005). However, we also recognize that the permissible use of prior convictions to prove intent may have the potentially impermissible side effect of allowing the jury to infer propensity. *See Jones*, 389 F.3d at 757; *Macedo*, 406 F.3d at 792.

Understanding the difficulty in distinguishing between the legitimate use of prior convictions as evidence of intent and the illegitimate use to show propensity, we have

held: "the government must affirmatively show why a particular prior conviction tends to show the more forward-looking fact of purpose, design, or volition to commit the new crime." *Jones*, 389 F.3d at 757. In other words, a prior conviction introduced solely for its own sake is propensity evidence, *see id*. at 758, but a prior conviction shown to have some additional relevance can qualify as intent evidence. *See id*. at 757. Of course, the devil lies in the details of what must be shown for the conviction to attain legitimacy.

This court has held in several cases that a theory of defense that calls into question intent can supply the additional relevance. In *Jones* we noted, "a prior conviction may be relevant to show intent if the defendant concedes that he possessed the drugs but denies that he planned to distribute them, or if he denies knowing that the substance was contraband." *Id*. at 757-58; *see also Puckett*, 405 F.3d at 596 ("evidence of a prior conviction . . . is especially relevant and probative" when defendant conceded that he had possession of a large amount of cocaine, but claimed it was for personal use). Each of the examples in *Jones* sketches a case in which the defendant himself opens the door to the use of the conviction by asserting that he lacked the requisite intent for the crime. In another recent case, we allowed the admission of the convictions to respond to the defense theory that the defendant did not have any intent to enter into a conspiracy to distribute drugs because he was "simply present at the airport by happenstance." *See Macedo*, 406 F.3d at 793. "This theory, coupled with the government's need to prove an essential element of the case, i.e., that the defendant acted with the requisite specific intent, supports the district court's decision to admit the prior bad acts." *Id*. In *United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir. 1994), this court held that "the 1984 cocaine transactions show that Kreiser was familiar with the cocaine business

and was not some hapless fool mistakenly caught up in some overzealous enforcement action." Such a defense theory provides the additional relevance necessary for a prior conviction to satisfy Rule 404(b) as intent evidence.

Turning to Chavis's case, we find that the prior conviction was used as evidence of his intent to engage in a conspiracy to possess drugs with an intent to distribute rather than to show his propensity to commit this crime. Chavis presented a defense that he was simply in the wrong place at the wrong time. He claimed no intent to distribute drugs because he was completely innocent. This is nearly identical to *Macedo*. By portraying himself as a clueless bystander, Chavis himself gave the prior conviction the requisite relevance to satisfy Rule 404(b). Given the defense theory and the government's obligation to prove specific intent, the district court did not abuse its discretion in determining that the prior conviction went to intent and not propensity. *See Macedo*, 406 F.3d at 793.

Chavis also argues that the introduction of the 1997 conviction violated the fourth prong of the Rule 404(b) analysis—that the probative value must not be substantially outweighed by the danger of unfair prejudice. "Evidence is unfairly prejudicial only to the extent that it will cause the jury to decide the case on improper grounds." *See United States v. Jones*, 248 F.3d 671, 676 (7th Cir. 2001). Here, the danger of unfair prejudice was relatively small. The district court gave a proper limiting instruction to the jury that the prior conviction could only be used for purposes of assessing Chavis's intent, and we must presume that the jurors followed this order.[1] *See Puckett*, 405 F.3d at 599; *see also*

---

[1] The district court actually gave limiting instructions to the jury
(continued...)

*Macedo*, 406 F.3d at 793. Chavis does not rebut this presump-
tion or demonstrate that the jury decided the case on any
improper grounds. On the other side of the ledger, the
evidence in this case had a great deal of probative value, as
it went directly to an element of the crime, which Chavis
himself made an issue in the case by denying any connec-
tion to the drugs. *See Puckett*, 405 F.3d at 599.

   Even if we concluded that the district court abused its
discretion by admitting this evidence in violation of
Rule 404(b), Chavis's challenge would nonetheless fail.
"A finding of this kind of error [in a decision to admit]
simply takes us to the next step, which is to ask whether the
error 'affect[ed] substantial rights.'" *Jones*, 389 F.3d at 758.
In this case, it did not, as there was overwhelming evidence
of Chavis's guilt. For two days authorities watched as
Thompson and Jefferson met across the street from Chavis's
residence before the attempted drug deals. The authorities
observed Chavis meet and apparently hand a package to
Jefferson shortly before Jefferson and Thompson were to
deliver drugs to the Flemonses. When the authorities closed
in on the men, they found drugs in the car, and Chavis and
Jefferson traded accusations of being set up. Chavis had 16
of the 19 marked bills that the Flemonses used in the
controlled buys. Jefferson testified as to the nature and
extent of the conspiracy, providing details about the length

---

[1]  (...continued)
twice about the consideration of this evidence, both after the
government initially presented the evidence and after closing
arguments. Each time the district court instructed the jury to
consider the conviction and other acts evidence only on the
question of intent, knowledge, or absence of mistake or accident.
The language employed correctly tracked the Seventh Circuit
Pattern Federal Criminal Jury Instruction 3.04 (1999).

of his relationship with Chavis and the frequency and terms of their drug transactions, including prices and payments on credit. The admission of the 1997 conviction had no effect on his substantial rights, given this mountain of evidence supporting the jury's verdict.

2.

Chavis next argues that the district court abused its discretion when it admitted, pursuant to Rule 404(b), the evidence that the police found during his April 2003 arrest. We evaluate using the same four-part test discussed above, despite the fact that the evidence was found several months after the charged offenses. *See United States v. Anifowoshe*, 307 F.3d 643, 646-47 (7th Cir. 2002) ("[B]y its very terms, 404(b) does not distinguish between prior and subsequent acts.") (quoting *United States v. Betts*, 16 F.3d 748, 757 (7th Cir. 1994)). Chavis challenges the introduction of his cell phone, an electronic scale, and $1,522 in cash as violating Rule 404(b), focusing on the first and fourth prongs of the analysis.

The district court did not abuse its discretion when it admitted the various pieces of evidence discovered at Chavis's arrest because the evidence was not offered to show propensity. Rather, the items from the 2003 arrest went directly to establishing his knowledge and intent relating to the charged 2002 crimes of conspiracy to distribute crack cocaine and possession with intent to distribute. As discussed previously, Chavis's theory of defense was complete innocence, contending that drugs were on the car floor and several thousand dollars in his pockets not because he was part of a drug conspiracy, but because of an unfortunate, yet explainable, chain of events. The evidence collected at the 2003 arrest show Chavis's intent and

knowledge to engage in the specified crimes in November. At the time of his arrest, he had over fifteen hundred dollars in cash on him, thus casting considerable doubt on his argument that he was carrying a large amount of money in 2002 because his girlfriend had given him her emergency funds and he had a good night with the dice. *See United States v. Shanks*, 97 F.3d 977, 981 (7th Cir. 1996) (large amount of cash considered relevant evidence for jury's finding of possession with intent to distribute). Further, he was found at his arrest with tools of the drug trade, such as scales, *see United States v. Carrasco*, 257 F.3d 1045, 1048 (9th Cir. 2001), making it highly unlikely that Jefferson merely happened into Chavis's car with crack cocaine on November 22. All the pieces of arrest evidence suggest that the innocent spin that Chavis seeks to give the November events is just that spin. The arrest evidence indicates that Chavis actually intended to take part in a drug conspiracy in November 2002.

Turning to the fourth prong of the Rule 404(b) analysis, the district court again gave a proper limiting instruction to the jury that lessened any prejudice from the arrest evidence. *See, e.g.*, *Macedo*, 406 F.3d at 793. The evidence itself had high probative value on Chavis's intent and knowledge relating to the conspiracy to distribute crack cocaine. Therefore, the district court did not abuse its discretion in admitting this evidence.

### 3.

Chavis also asserts that the district court should not have admitted testimony of Jefferson regarding his dealings with Chavis in the year preceding the charged offenses. Chavis challenged this evidence before the district court for

failing to comply with Rule 404(b). The district court disagreed and decided that the evidence was inextricably intertwined with the major issues in the case.

"As we have stated before, evidence 'concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of 'other acts' within the meaning of Fed.R.Evid. 404(b).'" *United States v. Ojomo*, 332 F.3d 485, 489 (7th Cir. 2003) (quoting *United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir. 1995)). To qualify as inextricably intertwined evidence that is outside Rule 404(b), "the question is whether the evidence is properly admitted to provide the jury with a 'complete story of the crime [on] trial,' whether its absence would create a 'chronological or conceptual void' in the story of the crime, or whether it is 'so blended or connected' that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime*." Ramirez*, 45 F.3d at 1102 (internal citations omitted). Even inextricably intertwined evidence must still pass muster under Rule 403, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403; *see also*, *United States v. Hargrove*, 929 F.2d 316, 320 (7th Cir. 1991).

In this case, Jefferson offered testimony describing the specifics of the drug conspiracy. He testified about the length of his relationship with Chavis and their arrangements for selling crack cocaine, including the amount and frequency of the drug sales and the drug prices. He explained that Chavis would front him drugs on credit, and

that Jefferson would repay Chavis after making a sale. The absence of this evidence about the prior dealings between Jefferson and Chavis would leave major questions regarding the conspiracy. This evidence completed the story for the jury, explaining how Jefferson and Chavis knew each other, worked together, and eventually ended up together in the liquor store parking lot on November 22. Furthermore, this highly probative evidence did not violate Rule 403, as it was not unfairly prejudicial, but simply testimony describing a drug conspiracy. *See United States v. Hicks*, 368 F.3d 801, 807 (7th Cir. 2004) ("Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one.") (citations omitted). The district court was right to admit this evidence.

### 4.

Turning to the final evidentiary challenge, Chavis contends that the district court erred when it admitted at his trial taped evidence recording the drug deals between Thompson and the Flemonses. Chavis suggests that this evidence violated Rule 403 in that the probative value of the tapes was outweighed by possible confusion of the issues or unfair prejudice. As Chavis did not challenge this evidence before the district court, we review for plain error. *See Price*, 418 F.3d at 779.

The district court did not violate Rule 403 in the admission of the tapes of the drug deals. The tapes went directly to a major element of the charged offenses—the actual distribution of the crack cocaine on November 21 and 22. To show that Chavis had possessed those drugs, the government needed to connect the Flemons's request for crack with the subsequent request for Chavis to supply those drugs.

The conversations between Chavis, Thompson, and Jefferson helped set the stage for Jefferson's testimony that he then went to Chavis for drugs. As such, they were highly probative and relevant. On the other side of the Rule 403 balance, we cannot conclude there was any unfair prejudice or confusion of the issues stemming from these tapes. The district court did not err.

B.

Chavis next argues that the district court improperly denied him a buyer-seller jury instruction. We review a district court's decision regarding a jury instruction for an abuse of discretion. *See United States v. Reed*, 227 F.3d 763, 771 (7th Cir. 2000). This court, when addressing a challenge to jury instructions, must view the jury instructions in the context of the trial as a whole. *See United States v. Pedigo*, 12 F.3d 618, 626 (7th Cir. 1993). We have previously held:

> A defendant must satisfy a four-part test before he is entitled to a jury instruction to present a theory of defense. He must show that (1) the proposed instruction is a correct statement of the law; (2) the evidence in the case supports the theory of defense; (3) the theory of defense is not already part of the charge; and (4) failure to include the proposed instruction would deny the defendant a fair trial.

*United States v. Meyer*, 157 F.3d 1067, 1074 (7th Cir. 1998). To satisfy the second prong of this analysis, a party must show evidence sufficient to create a reasonable doubt of guilt in the mind of a reasonable juror. *See id.*

In this case, Chavis wanted an instruction to inform the jury that the mere fact of a buyer-seller relationship did

not automatically mean there was a conspiracy. The line between a conspiracy and a mere buyer-seller relationship is difficult to discern, so district judges should instruct juries about the difference if there is evidence in the record that would support a jury rationally finding in the defendant's favor. *See United States v. Gee*, 226 F.3d 885, 895 (7th Cir. 2000). Before this court, Chavis contends that the short length of the conspiracy and the limited number of transactions engaged in was sufficient evidence to support the buyer-seller instruction.

We disagree; there was no evidence of a buyer-seller relationship between Jefferson and Chavis. The government presented evidence that the men were in cahoots as co-conspirators, while Chavis argued complete innocence. We have dealt with such a situation before. *See United States v. Fort*, 998 F.2d 542, 547 (7th Cir. 1993). In that case, at his trial for possession with intent to distribute and conspiracy for the same, Fort argued that he was a mere bystander. *See id*. at 543, 547. At the end of trial, he offered a buyer-seller jury instruction, which the district court rejected. *See id*. at 547. Affirming, we explained that "a buyer-seller instruction would have been inconsistent with the defense position that Mr. Fort was not a buyer at all." *Id*. Similarly in our case, Chavis offered no evidence that would support a buyer-seller instruction, and, in fact, such an instruction would contradict his only theory of defense—innocence. Therefore, the district court did not abuse its discretion in denying the instruction.

## C.

Finally, Chavis challenges his sentence based on *Booker*, asserting that the mandatory nature of the guidelines

made his sentence improper. The government agrees that a remand, as contemplated in *Paladino*, is appropriate because the district court sentenced Chavis under the then-mandatory guidelines. *See United States v. Castillo*, 406 F.3d 806, 823 (7th Cir. 2005) (quoting *United States v. White*, 406 F.3d 827, 835 (7th Cir. 2005) ("[M]ere mandatory application of the Guidelines—the district court's belief that it was required to impose a Guidelines sentence—constitutes error.")). Therefore, we order a limited *Paladino* remand to determine whether the district court, treating the guidelines as advisory, would reimpose the same sentence.

## III.

The district court was right to admit the various challenged pieces of evidence after properly considering arguments from counsel and conducting the appropriate analysis. Further, the court did not abuse its discretion when it concluded that there was no support for a buyer-seller jury instruction in the evidence at trial. We affirm the district court on these issues, and order a limited remand for it to conduct the *Paladino* inquiry.

CUDAHY, *Circuit Judge*, concurring. I do not agree that evidence of Chavis's 1997 conviction of a drug crime was admissible to show intent (or, as the government has also argued, knowledge). Chavis's defense was that although he was present at the scene of the drug sale, he did not supply the drugs at issue to Jefferson or Thompson. As

the majority puts it, Chavis claimed that "he was simply in the wrong place at the wrong time." His defense, then, is that the drugs were not his, not that he did not realize that drugs were involved. Although "[a] prior conviction may be relevant to show intent if the defendant concedes that he possessed the drugs but denies that he planned to distribute them, or if he denies knowing that the substance was contraband," neither of those scenarios is presented here. *United States v. Jones*, 389 F.3d 753, 757-58 (7th Cir. 2004). The analysis would be different, and intent or knowledge as discrete issues might be implicated, if Chavis had admitted to involvement in the transfer but asserted that he thought the stuff transferred was not crack cocaine but cough drops.

The government describes Chavis's defense as an assertion "that he just happened to stumble upon the scene of a drug deal, and that someone just happened to hand him crack cocaine, but that he never intended to possess or distribute the crack." This description is an attempt to shoehorn the prior conviction into the intent or knowledge exception by painting his defense (the drugs weren't mine) as a lack of intent (I had them, but I wasn't going to sell them) or a mistake (I thought they were cough drops). But again, Chavis never claimed that he had mistakenly sold anything or that he was unaware of what crack cocaine looked like. As in *Jones*, the government here has failed to articulate how the prior conviction established specific intent or some other state of mind as a concept discrete from Chavis's propensity to commit drug crimes. *Id.*

This, I think, is the essential point. To meet the test of Rule 404(b), there must be a showing that an issue has been joined as to intent, or another of the 404(b) categories, discrete from a showing of mere propensity. *E.g.*, *id.* at 757 ("the government must affirmatively show why a particular

prior conviction tends to show the more forward-looking fact of purpose or design, or volition to commit the new crime"); *United States v. Macedo*, 371 F.3d 957, 967 (7th Cir. 2004) ("when a defendant is charged with a specific intent crime, such as possession with intent to distribute, we have reasoned that evidence of a past action is probative if used to establish an essential element of the crime charged); *United States v. Best*, 250 F.3d 1084, 1091 (7th Cir. 2001) ("evidence of prior convictions or other misconduct is not admissible to show that a defendant has a propensity to commit crime and that he acted in conformity with that propensity on the occasion in question"). It is not enough that one or more of these categories (like specific intent) be a formal element of the crime. These categories must be discretely placed in issue to be a basis of 404(b) relevance. If not, the only plausible reason for introducing prior conviction evidence is to show propensity. The prior convictions tell the jury in fairly blatant terms that a defendant is not to be believed when he says the drugs were not his because he has done it before. This evidence, then, violates basic principles of criminal justice. *Jones*, 389 F.3d at 757.

Although I believe that there is error here as to the 404(b) issue, the other evidence is more than sufficient to support the judgment. I therefore join the majority in all but Part II.A.1 of the opinion.

A true Copy:

     Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
