In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 05-3557

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDDIE LEE STRONG,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 04 CR 78—**John Daniel Tinder**, *Judge*.

_____

ARGUED FEBRUARY 22, 2007—DECIDED MAY 14, 2007

_____

Before CUDAHY, RIPPLE and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge*. A jury found Eddie Strong, a felon, guilty of possessing ammunition but acquitted him of possessing a firearm. *See* 18 U.S.C. § 922(g)(1). He was sentenced to 62 months' imprisonment. Evidence was admitted at trial demonstrating that drugs were sold at the house where the firearm and ammunition were dis-

covered.[1] Mr. Strong challenges the admission of this evidence as irrelevant and prejudicial. Because this evidence tended to prove Mr. Strong's knowing possession of the drugs and the firearm and because it was not unduly prejudicial, we affirm his conviction.

# I

# BACKGROUND

In 2003, police in Muncie, Indiana, began investigating alleged drug trafficking at a house located at 612 East 5th Street. This residence belonged to Mr. Strong's elderly stepfather. The police had seen Mr. Strong there on numerous occasions. In January 2003, officers sent a confidential informant into the house to purchase drugs from Mr. Strong. The informant returned with crack cocaine; on the same day, the officers obtained and executed a search warrant for the house. The officers found recorded money from the controlled buy in Mr. Strong's pockets. The officers videotaped the rest of their search in which they found illegal drugs, two guns and ammunition in the home.

Police officers returned to the house in April 2004 to execute an arrest warrant for Mr. Strong. While conducting surveillance on the house prior to the arrest, the officers observed "ten people, come up to the residence, go inside, stay just a few minutes, two to four minutes and leave the residence." Tr. I at 220 (May 31, 2005). The officers then observed Mr. Strong, his stepfather and a third man step out on the front porch. They eventually

---

[1]  Mr. Strong was not charged with any drug-related offenses.

arrested Mr. Strong and found $810 in his pocket. Because they smelled "burnt marijuana," *id*. at 208, the officers asked for and received the stepfather's consent to search the house. Officers once again videotaped their search and again found drugs and ammunition.

In May 2004, Mr. Strong was charged in a six-count indictment with possessing two firearms and four types of ammunition. *See* 18 U.S.C. § 922(g)(1). In March 2005, a jury acquitted Mr. Strong of four of the counts but was unable to come to a unanimous verdict on Counts 1 and 2.[2] Count 1 charged Mr. Strong with possessing an SKS rifle in January 2003, and Count 2 charged him with possessing multiple rounds of 9 mm ammunition in April 2004. The district court scheduled a new trial on those remaining counts.

In May 2005, the Government gave notice of its intent to introduce several pieces of evidence related to crimes that were not charged in Counts 1 and 2: information relating to the January 2003 controlled buy, details of the April 2004 surveillance of 612 East 5th Street and the drugs, ammunition and second gun found in the house on both occasions. At a pretrial hearing, Mr. Strong's counsel objected that this evidence was inadmissible. He contended that the Government would have "the same problem in proving that he possessed or sold these drugs that they do in proving that he possessed the weapon, in that they don't have much evidence that he's the one that possessed it." R.84 at 9. Counsel emphasized, for instance, that Mr. Strong

---

[2] The new trial addressed Counts 1 and 3 of the original indictment. The parties referred to the third count as "Count 2" throughout this trial. For ease of reading, we shall use the same terminology throughout this opinion.

did not live at 612 East 5th Street. Counsel also briefly commented that the evidence was not admissible under either Federal Rule of Evidence 404(b) or under the "inextricably intertwined" doctrine because, in his view, it was "a real stretch" to connect drug dealing to possessing the weapons charged in the indictment. *Id.* The district court ruled that all of the evidence was admissible under the "inextricably intertwined" doctrine because the evidence "would go to the question of the defendant's knowledge, motive, and intent with respect to the [charged firearm and ammunition] . . . whether, he, in fact, possessed those things." *Id*. at 19. The court then considered the possibility of prejudice, but concluded that it was "far outweighed" by the probative value of the evidence. *Id.* Finally, the court added that it would give the jury a limiting instruction.[3]

At trial, the Government's witnesses recounted each search in detail. The police officer responsible for managing

---

[3] At trial, when the Government completed its opening statement, the court gave the following instruction:

> [Y]ou may hear evidence during this trial about drugs and guns which are not the subject of charges in the indictment.

> You may consider this evidence only on the questions of whether the defendant had knowledge of the firearm and the ammunition that is charged in the two counts of the indictment. Whether the defendant had the intention to possess the firearm and the ammunition charged in those two counts, and whether the defendant had a motive to possess the firearm and ammunition charged in those two counts, you may consider this evidence only for these limited purposes.

Tr. I at 138-39 (May 31, 2005).

the informant testified regarding the controlled buy in January 2003, and the Government introduced both the crack cocaine sold to the informant and the recorded buy money found on Mr. Strong.[4] Another officer testified about the April 2004 surveillance and Mr. Strong's arrest on the porch. The Government then played the videotapes of each search for the jury. The videos showed the officers finding the SKS rifle charged in Count 1 under the bed in the southwest bedroom; the ammunition charged in Count 2 in both the southwest bedroom and the living room; crack and powder cocaine, digital scales and other ammunition in the southwest bedroom and the living room; and a handgun in the northwest bedroom. The Government then introduced into evidence the items shown on the video-tapes.[5]

The Government also introduced several documents that tied Mr. Strong to the house. In the southwest bed-room, officers found mail addressed to Mr. Strong at 612 East 5th Street, his driver's license (bearing a different address) and various documents pertaining to his car-detailing business. A gas bill bearing Mr. Strong's name was found in the living room next to more of the charged 9 mm ammunition that formed the basis of Count 2. In addition, authorities discovered a satellite television bill bearing Mr. Strong's name in the kitchen.

---

[4] Immediately after the drugs were introduced, the court gave a limiting instruction that mirrored the instruction it gave during opening statements. Tr. I at 157-58.

[5] After each piece of evidence was introduced, the court repeated, on most occasions, its limiting instruction. Tr. I at 170, 208; Tr. II at 97, 99 (June 1, 2005).

A fingerprint expert then testified that he had found Mr. Strong's fingerprint on the SKS rifle.[6] Additionally, John O'Boyle, a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, testified that he knew from his experience that drug dealers often possess fire-arms "to protect their narcotics" and as a "way of intimida-tion." Tr. II at 106-07 (June 1, 2005).[7]

During his testimony, however, Mr. Strong reiterated that he did not live at the house and that any possible connec-tion between drugs and weapons was irrelevant because none of the items found there belonged to him. His brother Johnny testified that he had both lived and used drugs in the southwest bedroom in 2003 and 2004 and that his

---

[6] Mr. Strong responded to the fingerprint evidence by testifying that the rifle belonged to his brother-in-law who "showed it to me one day . . . ." Tr. II at 171.

[7] The court then interrupted and gave the following instruction:

> I will remind the jurors that all of the evidence regarding drugs and firearms and ammunition not charged in the indictment was admitted only for a limited consideration with respect to . . . whether the defendant had knowledge of the firearm and ammunition charged in the two counts of the indictment; whether the defendant had the intention to possess the firearm and ammunition charged in those two counts; and whether the defendant had a motive to possess the firearm and ammunition charged in those two counts.
>
> So with respect to Agent O'Boyle's testimony about those things, the drugs and ammunition and firearms not charged in the indictment, they can be considered—his testimony about that can be considered only for that limited purpose as well.

Tr. II at 107.

brother-in-law had "left behind" the SKS rifle before he passed away. *Id.* at 129. Mr. Strong, testifying on his own behalf, explained that he, his wife and their children were living in a different house, one that he owned, when the charged events occurred. He further explained that he had spent time at 612 East 5th Street and had utilities in his name there only because he was the primary caregiver for his elderly stepfather. On cross-examination, however, Mr. Strong admitted that he had told the arresting officers that his address was 612 East 5th Street. The jury ultimately acquitted Mr. Strong of possessing the rifle, but found him guilty of possessing the 9 mm ammunition.

## II

## DISCUSSION

On appeal, Mr. Strong principally argues that, although it was appropriate for the district court to permit the police witnesses to provide a "general discussion" of how the search warrants were obtained, most of the evidence about the second gun and drug dealing at 612 East 5th Street was not inextricably intertwined with the charged firearm offenses because that evidence did not help complete the story of the crimes or tend to prove any of their elements. Appellant's Br. at 24-25. Without elaboration, Mr. Strong concedes that "some" of the disputed evidence "was blended" or connected with relevant evidence, but he asserts that the "vast majority" was irrelevant and could have been excluded without leaving a conceptual void at trial. *Id.*

Because Mr. Strong argued at the pretrial hearing that the inextricably intertwined doctrine did not apply, we review the district court's decision to admit the evidence

under that doctrine for an abuse of discretion. *See United States v. Holt*, 460 F.3d 934, 936 (7th Cir. 2006). Acts "inextricably intertwined" with charged crimes are generally admissible; they are "not evidence of 'other acts' within the meaning of Fed. R. Evid. 404(b)" and are not subject to the constraints of that rule. *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002) (quoting *United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir. 1995)); *see also United States v. James*, 464 F.3d 699, 709 (7th Cir. 2006) ("If the evidence of other crimes or bad acts provides direct or inextricably intertwined evidence (often referred to as intricately related evidence) of the acts charged, it is not subject to the constraints of Rule 404(b)."). An act is "inextricably intertwined" with the charged crime if it completes the story of the crime, creates a chronological or conceptual void in the story if omitted, helps to explain the circumstances surrounding the charged crime or tends to prove an essential element of the charged crime. *Senffner*, 280 F.3d at 764.

When a defendant has been charged with possession of a firearm by a felon, we repeatedly have held that evidence of contemporaneous uncharged drug trafficking is admissible under the "inextricably intertwined" doctrine because such evidence tends to prove "knowing possession" of the firearm. *See* 18 U.S.C. § 922(g)(1); *United States v. Lott*, 442 F.3d 981, 985 (7th Cir. 2006); *United States v. Murray*, 89 F.3d 459, 463 (7th Cir. 1996). As we have explained, "drug trafficking supplies a motive for having [a] gun . . . [b]ecause weapons are 'tools of the trade' of drug dealers." *United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir. 2000) (internal citations omitted).

In this case, the evidence of Mr. Strong's involvement in drug trafficking at 612 East 5th Street tended to prove

his knowing possession of the rifle and ammunition because the evidence helped tie him to the house (where those items were found) and helped explain why he would possess the items.[8] The district court, through its repeated instructions, made it abundantly clear that the evidence was to be considered solely for those purposes. *See* Tr. I at 139, 146, 158-59, 169-70, 208; Tr. II at 97, 99, 107. The inextricably intertwined doctrine applies despite trial counsel's submission that Mr. Strong denied living at 612 East 5th Street. At most, counsel's contention goes to the weight, not the admissibility, of the evidence. *See United States v. Price*, 418 F.3d 771, 781 (7th Cir. 2005) (weapons found in house properly admitted to demonstrate defendant's involvement in drug dealing over his objection that he did not live in house); *United States v. Duran*, 407 F.3d 828, 837-38 (7th Cir. 2005) (cash found on defendant properly admitted even though defendant denied earning it from charged conspiracy).

Mr. Strong also argues that, even if the drug trafficking evidence was "inextricably intertwined," the district court should have limited the amount of such evidence because, in the aggregate, it was unduly prejudicial. He contends that the videotapes only "exacerbated" the prejudicial effect of the evidence. Appellant's Br. at 21. Considering the sheer volume of this evidence, submits Mr. Strong, his trial ceased to be about his possession of the one firearm

---

[8] Mr. Strong himself raised the issue of motive: He testified that, when his brother-in-law showed him the rifle, Mr. Strong responded, "I don't like guns. My son got shot three times." Tr. II at 171. Mr. Strong repeated this sentiment on cross-examination, stating, "I'm not fond with guns . . . I'd rather not even be around a gun." *Id.* at 194.

and ammunition charged in the indictment and instead became a "mini series" about drug dealing. *Id*. at 25.

Even inextricably intertwined evidence must withstand scrutiny under Federal Rule of Evidence 403, which allows a district court to exclude relevant evidence if its prejudicial impact substantially outweighs its probative value. *See* Fed. R. Evid. 403; *United States v. Chavis*, 429 F.3d 662, 670 (7th Cir. 2005). Nevertheless, the district court enjoys a great deal of latitude in determining whether to admit evidence over a Rule 403 objection. Our review is for abuse of discretion. *See United States v. Williams*, 238 F.3d 871, 874 (7th Cir. 2001). Indeed, we have held that "[t]he court's admission of evidence under Rule 403 of the Federal Rules of Evidence is entitled to special deference. Only in an extreme case are appellate judges competent to second-guess the judgment of the person on the spot, the trial judge." *United States v. Gardner*, 211 F.3d 1049, 1055 (7th Cir. 2000) (internal citations and quotation marks omitted).

The district court's conclusion that the probative value of the drug trafficking evidence was not outweighed substantially by the danger of unfair prejudice was not an abuse of its discretion. "Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Hicks*, 368 F.3d 801, 807 (7th Cir. 2004) (internal citations omitted). Here, there was nothing inherently emotional or incendiary about the disputed evidence. *See Price,* 418 F.3d at 782 (videotape displaying drug activity that witnesses had previously described was not unduly prejudicial just because it gave

the jury a "physical, as opposed to a mental, picture").[9] Nonetheless, the district court remained vigilant about the possibility of prejudice; as we have noted, it gave many limiting instructions. *See* Tr. I at 139, 146, 158-59, 169-70, 208; Tr. II at 97, 99, 107. We consistently have explained that such instructions minimize the prejudicial effect of this type of evidence. *See United States v. Whitlow*, 381 F.3d 679, 686 (7th Cir. 2004); *United States v. Rollins*, 301 F.3d 511, 520 (7th Cir. 2002). Without an indication to the contrary, we assume that the jury followed those instructions. *See United States v. Jones*, 248 F.3d 671, 676 (7th Cir. 2001). We recognize that a sizeable amount of uncharged conduct was admitted in this case. However, considering the significant linkage of drug trafficking and firearms,[10] we cannot say that the district court abused its discretion by determining that it was proper for the jury to be made aware of the

---

[9] *Compare United States v. Chavis*, 429 F.3d 662, 671 (7th Cir. 2005) ("inextricably intertwined" evidence detailing defendant's multiple prior drug sales deemed not unduly prejudicial) *with United States v. Hite*, 364 F.3d 874, 881-82 (7th Cir. 2004) (evidence that defendant played "Russian roulette" and pointed gun at witness' head deemed "inextricably intertwined" as evidence of knowing possession of gun but excluded as unduly prejudicial), *vacated on other grounds*, 543 U.S. 1103 (2005).

[10] Agent O'Boyle explained that:

> Individuals involved in narcotics trafficking would have firearms to protect their narcotics from other drug dealers, thieves. And they also use it as a way of intimidation. An individual might show up wearing a firearm or have a firearm at a location to intimidate the person coming to buy narcotics to show that in case they needed something to use, they would use the firearm.

Tr. II at 106-07.

substantial likelihood that drugs were being dealt at 612 East 5th Street. *See generally United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) (explaining that "all probative evidence is prejudicial to the party against whom it is offered . . . the relevant inquiry is whether there was *unfair* prejudice") (emphasis in original).

   Accordingly, Mr. Strong's conviction is affirmed.

AFFIRMED

A true Copy:

   Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*