In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3666

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARK HURN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-CR-0085—**John C. Shabaz**, *Judge.*

ARGUED JUNE 8, 2007—DECIDED AUGUST 3, 2007

Before POSNER, FLAUM, and MANION, *Circuit Judges.*

FLAUM, *Circuit Judge.* After a two day trial, a jury acquitted Mark Hurn of possession of cocaine base with intent to distribute, but found him guilty of possession of powder cocaine with intent to distribute. At sentencing, the district court found that Hurn distributed cocaine base, notwithstanding the jury's acquittal on that count, and calculated a Guidelines range of 188 to 235 months in prison. Though Hurn argued that his I.Q. of between fifty and sixty-four merited a much lower sentence, the district court sentenced him to 210 months' imprisonment. Hurn appeals his conviction and sentence. For the following reasons, we affirm.

## I. Background

On June 2, 2005, officers from the Dane County Narcotics and Gangs Task Force executed a search warrant at Hurn's home in Madison, Wisconsin. The officers found over 450 grams of cocaine base, approximately fifty grams of powder cocaine, ecstasy pills, and over $38,000 in cash throughout the home. Hurn admitted that he was a drug dealer and that the drugs and money belonged to him. He also showed the officers where some of the drugs and money were located.

On June 22, 2005, a grand jury returned a two-count indictment. Count One charged Hurn with possessing fifty or more grams of cocaine base with intent to distribute and Count Two charged him with possessing cocaine with intent to distribute, both counts in violation of 21 U.S.C. § 841(a).

Before trial, the government advised Hurn that it planned to use a 1995 drug conviction to prove his intent and lack of mistake.[1] Hurn argued that the admission of his prior conviction would violate Federal Rule of Evidence 404(b), but the district court ruled that the evidence was admissible.

At trial, Hurn maintained that the drugs were not his and that he falsely confessed to police because he was afraid that the real owners of the drugs would harm him. His live-in girlfriend, Sabrina Mays, testified that she allowed a number of other individuals to live in the home from time to time and that they were responsible for the drugs found there. The government argued that Hurn's defense was not credible, pointing to his post-arrest admissions and lack of legitimate employment during the relevant time period. The district court admit-

---

[1] Hurn was sentenced to five years in prison for this conviction.

ted Hurn's prior conviction over his continued objection, but instructed the jury that the conviction should be considered only as evidence of Hurn's intent. Ultimately, the jury acquitted Hurn on Count One (cocaine base), but convicted him on Count Two (powder cocaine).

The probation office prepared a presentence report (PSR), and concluded that, despite the verdict, a preponderance of the evidence demonstrated that Hurn possessed with intent to distribute both cocaine powder and cocaine base. As a result, it advised the district court to consider Hurn's possession of cocaine base when determining Hurn's relevant conduct under Federal Sentencing Guideline § 1B1.3. The PSR recommended a base offense level of 34, a criminal history category of III, and a Guidelines range of 188 to 235 months. Had the PSR not included Hurn's possession of cocaine base in its relevant conduct calculation, Hurn's recommended Guidelines range would have been 27-33 months.

At sentencing, Hurn objected to the consideration of acquitted conduct and argued that his low intellectual capacity merited a sentence at the low end of the 27-33 month Guidelines range. The court rejected Hurn's plea for leniency, noting that he made the same sentencing argument after a previous drug conviction:

> The present offense is remarkably similar to the 199[5] crack distribution case that you had before Judge Fielder. It's a rerun where he admonished you and addressed the issue of diminished capacity. Even back then the court took note that you had been making a living as a drug dealer[,] and despite your cognitive disabilities you successfully amassed large sums of money. We do not entirely discount your intellectual impairments as a factor. It does mitigate the crime. But nonetheless, you were in there with your eyes wide open[,] and it is now time for sentencing.

Sent. Trans. at 33-34. The district court also concluded that the government proved by "clear and convincing evidence" that Hurn personally possessed cocaine base with intent to distribute. It then sentenced him to 210 months in prison.

## II.  Analysis

### A.  Rule 404(b) Evidence

Hurn's first argument concerns the district court's admission of his 1995 conviction. Though the district court ruled that the conviction was relevant to prove intent, Hurn claims that the conviction only demonstrated his propensity to deal drugs, a prohibited purpose under Rule 404(b). We review the district court's admission of evidence under Rule 404(b) for an abuse of discretion. *See United States v. Senffner*, 280 F.3d 755, 762 (7th Cir. 2002). We give the district court great deference in such matters, and we will not substitute our judgment for that of the district court. *Id.*

Rule 404(b) prohibits the government from using prior bad acts "to prove the character of a person in order to show action in conformity therewith," but allows the admission of such evidence to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This Court evaluates the admissibility of prior bad acts under a four part test. The evidence must be relevant to an issue other than the defendant's propensity to commit the crime charged, the other act must be similar enough and close enough in time to be relevant, there must be sufficient evidence that the defendant committed the similar act, and the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *See United States v. Puckett*, 405 F.3d 589, 596 (7th Cir. 2005).

This Court has recognized several situations in which a prior drug conviction is relevant to prove the defendant's intent in a subsequent prosecution for possession of drugs with intent to distribute. The most obvious situation is the one "in which the defendant, while admitting possession of the substance, denies the intent to distribute it." *United States v. Jones*, 455 F.3d 800, 808 (7th Cir. 2006). A prior conviction is also relevant when the defendant concedes being in the vicinity of drug activity but argues that he was a "clueless bystander." *See United States v. Chavis*, 429 F.3d 662, 668 (7th Cir. 2005); *United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005). In *Chavis*, the defendant was caught buying cocaine base from a drug dealer, but claimed that he "was simply in the wrong place at the wrong time." We held that the defendant's prior drug conviction was admissible to prove intent. *Chavis*, 429 F.3d at 668. In *Macedo*, the defendant was arrested at O'Hare airport after he met two Mexican nationals who had attempted to smuggle methamphetamine into the country. At trial, he claimed that he had nothing to do with the drug conspiracy and was at the airport "by happenstance." We held that a nine-year-old drug conviction was admissible to prove intent. *Macedo*, 406 F.3d at 793.

In this case, Hurn conceded in his closing argument that he knew there were cash and drugs in the home, but maintained that he did not know how much cash or what kind of drugs were there because none of it was his. He maintained that he stayed in the home only occasionally and that he falsely confessed to owning the drugs because he was afraid of retaliation by the real drug dealers. Just like the defendants in *Chavis* and *Macedo*, Hurn claimed that he was an innocent bystander who was in the wrong place at the wrong time. Accordingly, the prior conviction was relevant on the issue of Hurn's intent.

Hurn also maintains that the 1995 conviction was too remote to be relevant and that its unfair prejudice substantially outweighed its probative value. We have held that a district court does not abuse its discretion by admitting thirteen-year-old evidence of prior bad acts where the prior conduct is very similar to the conduct charged. *See United States v. Wimberly*, 60 F.3d 281, 285 (7th Cir. 1995); *see also Macedo*, 406 F.3d at 793 (holding that the admission of Rule 404(b) evidence is proper in a drug case where nine years elapse between the prior conduct and the conduct charged). *Cf. United States v. Garcia*, 291 F.3d 127, 138-39 (2d Cir. 2002) (holding that a district court errs by admitting a twelve-year-old drug conviction to prove intent in a subsequent drug prosecution). Here, Hurn's previous conviction involved conduct that was very similar to the conduct charged. In both instances, Hurn was caught distributing large quantities of cocaine while in possession of significant amounts of cash. Consequently, his ten-year-old conviction was not too remote to be used at trial.

Additionally, the prior conviction's probative value was not substantially outweighed by unfair prejudice. Importantly, the district court instructed the jury to consider the prior conviction only as evidence of intent, "and we must presume that the jurors followed this order." *Chavis*, 429 F.3d 668-69. Moreover, the conviction was highly probative because it went directly to Hurn's intent to distribute cocaine, which he "made an issue in the case by denying any connection to the drugs." *Id.* at 669.

### B.  Relevant Conduct

Hurn next argues that the district court violated his Sixth Amendment and due process rights by using acquitted conduct to enhance his sentence. The Supreme Court, in *United States v. Watts*, 519 U.S. 148, 154 (1997), held

that when calculating a defendant's relevant conduct under section 1B1.3 of the Federal Sentencing Guidelines, "a sentencing court may consider conduct of which a defendant has been acquitted." The Court noted that "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *Id.* at 156 (internal quotation omitted). Hurn, citing several district court decisions, contends that *United States v. Booker*, 543 U.S. 220 (2005), overruled *Watts*. This Court has held, however, that *Watts* survived *Booker*, and we decline to reconsider our position. *See United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007); *United States v. Price*, 418 F.3d 771, 788 & n.7 (7th Cir. 2005).

*Watts* acknowledged that there is some disagreement among circuit courts about whether a sentence, like this one, that is based almost entirely on acquitted conduct, violates due process when the district court applies a preponderance of the evidence standard rather than requiring clear and convincing evidence. *Compare, e.g.*, *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999) (requiring clear and convincing proof where the use of acquitted conduct results in a seven-level adjustment to the defendant's Guidelines range), *with United States v. Ward,* 190 F.3d 483, 492 (6th Cir. 1999) (holding that a district court may find acquitted conduct by a preponderance of the evidence). Nevertheless, the disagreement—which *Watts* did not resolve—is not relevant in this case, because the district court applied the higher standard of proof when determining that Hurn committed the conduct in question. Moreover, the evidence at trial and sentencing amply supported the district court's finding. Putting aside the numerous admissions that Hurn made to police immediately after his arrest as well as the physical evidence uncovered during the search, Hurn acknowledged that the district court could conclude that

he allowed others to store cocaine in his home.[2] An individual can be held criminally responsible for distributing drugs if he allows others to store drugs in his home for that purpose. *See United States v. Jenkins*, 78 F.3d 1283, 1287 (8th Cir. 1996); *United States v. Smith*, 26 F.3d 739, 748 (7th Cir. 1994).

Because clear and convincing evidence supported the district court's finding that Hurn possessed cocaine base with intent to distribute, the district court's use of acquitted conduct did not violate Hurn's Sixth Amendment or due process rights.

## C.  The § 3553(a) Factors and Reasonableness

Lastly, Hurn argues that his sentence should be vacated for two reasons that the Supreme Court recently discussed in *Rita v. United States,* 127 S. Ct. 2456, 2462 (2007). He argues that the district court did not adequately consider the sentencing factors outlined in 18 U.S.C. § 3553(a) and that his sentence is substantively unreasonable because it gives insufficient weight to his diminished mental capacity. We address each argument in turn.

### 1.  Consideration of § 3553(a) Factors

In *Rita*, the Supreme Court discussed what and how much a sentencing judge must state on the record to demonstrate that it considered the § 3553(a) factors. 127

---

[2] In a letter written to the district court prior to sentencing, Hurn's attorney wrote, "At the most, Mark was a dupe who allowed his 'friends' to use his and [Mays]'s home to store the materials." Hurn's attorney made this concession even though the district court instructed the jury to convict Hurn if he knowingly aided or abetted another's commission of the crime.

S. Ct. at 2468-69. Ultimately, the Court concluded that the judge need not say a great deal. In *Rita*, the defendant was convicted of perjury and requested a sentence below the applicable Guidelines range. He argued that because he was a former government criminal justice employee, other inmates were likely to retaliate against him. He also maintained that his poor physical health and former military service weighed in favor of leniency. The government responded that a former criminal justice employee should have known better than to interfere with a federal investigation. The sentencing judge asked the parties questions about each sentencing factor, and after hearing the parties' arguments, decided that the defendant's Guidelines range provided an appropriate sentence that would protect the public from the defendant's crime. He then sentenced the defendant to the bottom of the Guidelines range.

Though the sentencing judge did not mention the defendant's reasons for leniency, the Supreme Court held that his statement demonstrated that "he ha[d] considered the parties' arguments and ha[d] a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 2468. The Court said that the judge listened to the defendant's arguments and "simply found these circumstances insufficient to warrant a sentence lower than the Guidelines range." *Id.* at 2469. It further explained that although the judge could have elaborated that "he had heard and considered the evidence and argument," that the Sentencing Guidelines reflected a proper sentence, and that the defendant's "personal circumstances here were simply not different enough to warrant a different sentence," the context of the judge's statements made his reasoning clear and allowed the Court to review that reasoning on appeal. *Id.*

The district court in this case said substantially more than the judge in *Rita*. After listening to Hurn's two

arguments for leniency—his limited role in the offense and his diminished mental capacity—the district court provided reasons for rejecting them. As a factual matter, the court concluded that Hurn was not a minor player in the offense, *see* Sent. Tr. at 33. Addressing Hurn's second argument, the district court read into the record the sentencing transcript from Hurn's 1995 drug conviction. In that case, the state court judge discussed the very same issue of limited mental capacity:

> Mr. Hurn, I realize you have had some inherent difficulties in your life that are beyond your control, by that I mean the fact that you are developmentally disabled. That came through very clearly in the presentence investigation report . . . . I'm satisfied that you are of sufficient mental ability to know that dealing in drugs is wrong and that people who do so are going to be punished, oftentimes punished harshly, because this is something that society is simply not going to tolerate. Regardless of your degree of educability, I am further satisfied that that [sic] you are aware that someone holding 50 or approximately 50 pieces of crack cocaine and having on their persons three separate wads of money which totaled up to $3700 is someone who is involved in the drug trade . . . . And I'm satisfied that you were in there with your eyes open, that you knew the potential penalties you faced.

Sent. Tr. at 32-33. The district court stated that this case was "remarkably similar" to the 1995 drug conviction and that despite the state court judge's prior admonitions, Hurn had returned to a life of dealing drugs. *Id.* at 33. In other words, the court discounted Hurn's limited mental capacity argument because he was fully aware that dealing drugs could lead to serious consequences, particularly after his stint in prison.

The Court then recited the § 3553(a) factors, noting that an important consideration would be how to fashion a sentence that "would somehow deter [Hurn] from [his] continued criminal activity." *Id.* It also repeated the importance of Hurn's criminal history, noted his history of alcohol and drug abuse, and pointed out that Hurn's drug quantities were at the top of the drug quantity range. In short, the district court addressed Hurn's arguments in favor of leniency, discussed the § 3553(a) factors that it found most important, and ultimately settled on a sentence in the middle of the Guidelines range. As a result, it sufficiently articulated the reasons for Hurn's sentence.

### 2. Reasonableness

Hurn also argues that the length of his sentence is unreasonable because the district court gave insufficient weight to his limited mental capacity. A Guidelines sentence is presumptively reasonable, *see Rita,* 127 S. Ct. at 2462, "and we review the district court's decision deferentially." *United States v. Otero*, No. 05-3132, 2007 WL 2050403, at *6 (7th Cir. July 19, 2007). Hurn has not convinced us that his sentence is an exception to the general rule that a Guidelines sentence is reasonable. The district court reasonably concluded that, despite Hurn's low I.Q., he knew that he was engaging in serious criminal activity and that—given the prior conviction for the same offense—a Guidelines range sentence was necessary to deter him from further criminal behavior.

### III. Conclusion

For the foregoing reasons, we AFFIRM Hurn's conviction and sentence.

No. 06-3666

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*