NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 12, 2007
Decided August 8, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2968

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois |
| *v.* | No. 05-20048-001 |
| DONDRE L. MOORE, *Defendant-Appellant.* | Michael P. McCuskey, *Chief Judge* |

**O R D E R**

A jury convicted Dondre Moore of selling crack in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), to a confidential informant; Moore was sentenced to 150 months' imprisonment. On appeal, he contends that the district court erred in admitting evidence of his prior crack sales to the same confidential informant. Although he may be correct that the evidence came too close showing only that he had a propensity to deal crack, on this record any error that the court may have committed was harmless. We therefore affirm Moore's conviction.

**I**

Evidence at trial revealed that Moore became the target of a controlled drug buy after Desie Warren, who was facing serious drug charges, fingered him as a crack

dealer. In March 2005 Warren, acting as a confidential informant, arranged to purchase half an ounce of crack from Moore at a gas station. Police searched Warren prior to the deal to make sure that he was contraband-free, gave him $400 to buy the crack, and set up surveillance near the gas station to videotape the transaction. Warren was also wearing a hidden video camera. The videos show Warren and Moore meeting at the gas station, Moore taking a bundle of cash from Warren, and the two driving around the block in Moore's car, out of the surveilling officers' sight. Warren testified that it was when the officers were unable to observe them that Moore handed him the four bags of crack that he later turned over to police. No hand-to-hand transaction was videotaped, though, and Moore's version of the story was that the crack came from another source. He noted that the videotapes show a woman leaning into Warren's vehicle prior to Moore's arrival at the gas station.

Before trial, the government gave notice of its intent to introduce evidence showing previous drug transactions between Moore and Warren. In a memorandum filed on the first day of trial, the government argued that this evidence was not "other crimes" evidence prohibited by FED. R. EVID. 404(b) because it "establish[ed] the nature of the relationship between the defendant and [Warren], including the foundation of trust," and therefore was "inextricably intertwined" with the underlying crack charge. A hearing on the motion took place before voir dire. Defense counsel objected to the admission of the evidence, arguing that it was "propensity evidence" that "puts the defendant in a very bad light." The district court overruled the objection, concluding that the evidence was not 404(b) evidence because it completed the story of the underlying crime and was therefore inextricably intertwined with the offense:

> It's not other bad acts evidence. It's evidence that is intrinsically related and inextricably intertwined with the charged offense. It shows how the relationship between the defendant and Mr. Warren began and evolved into the charged offense . . . the Seventh Circuit has characterized this evidence as necessary to provide a complete story of the relationship between the parties, between Mr. Moore and Mr. Warren; and, therefore, this is evidence that is admissible. As the Seventh Circuit has said many, many times, relevant admissible evidence is inherently prejudicial; but the court does not believe that this is being introduced for propensity.

At trial, during the government's direct examination of Warren, the jury heard limited evidence about the prior uncharged crack transactions between Warren and Moore. Warren testified that, in addition to the March 2005 crack sale charged in the indictment, he had previously purchased half-ounces of crack from Moore on six to ten occasions in 2003 and 2004, and that a few of these transactions occurred at the same car wash as the underlying sale. At closing argument the government also alluded to the prior transactions when it stated that Moore was "someone who [Warren]

purchased drugs from before." At the end of trial, as defense counsel requested, the court instructed the jury that it should consider the evidence of the prior drug transactions "only on the question of the nature of the relationship between the defendant and Desi[e] Warren" and "only for this limited purpose."

## II

Moore argues that the admission of testimony about his prior drug sales to Warren was erroneous because it was not "inextricably intertwined" with the charged offense and thus should have been excluded as impermissible "other crimes" character evidence under Rule 404(b). He argues that this evidence was neither chronologically nor conceptually necessary to the story of the crack offense, nor was it so connected to the underlying sale that it incidentally involved, explained the circumstances surrounding, or tended to prove an element of the crime.

This court reviews a district court's evidentiary rulings for abuse of discretion. See *United States v. Holt*, 460 F.3d 934, 936 (7th Cir. 2006). FED. R. EVID. 404(b) generally prohibits district courts from admitting evidence concerning a defendant's other uncharged bad acts. See *United States v. James*, 464 F.3d 699, 709 (7th Cir. 2006). But prior bad acts evidence does not implicate Rule 404(b) if it is "inextricably intertwined" with the charged offense. *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006). This court has upheld the admission of evidence as "inextricably intertwined" where the evidence completes the story of the charged crime; where it is so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of the charged crime; or where its absence would create a chronological or conceptual void in the narrative of the charged crime. See *United States v. Simpson*, 479 F.3d 492, 500-01 (7th Cir. 2007); *James*, 464 F.3d at 709-10 (collecting cases).

None of these rationales applies in this case. Moore stood trial for a single sale of crack to Warren in March 2005. Evidence that he sold crack to Warren in 2003 and 2004 did not complete the story of, incidentally involve, explain the circumstances surrounding, or prove an element of the charged crime. The charged sale was an isolated incident that began when Warren, at the behest of police, contacted Moore to set up the controlled buy. Nor would the absence of the evidence have created a chronological or conceptual void in the narrative of the underlying offense. Although Warren's testimony regarding the prior sales provides some context for the charged sale, the jury would not have been left with a "confusing and incomplete picture" without it. *United States v. Harris*, 271 F.3d 690, 705 (7th Cir. 2001) (upholding admission of confidential informant's testimony regarding prior drug sales between himself and defendant where the prior sales explained defendant's use of code language that would have been confusing for the jury in the absence of testimony

regarding prior sales). If the jury had not heard Warren's testimony about his prior dealings with Moore, "it would not have occurred to them that they were missing anything or have made any of the other evidence in the case unintelligible." *Simpson*, 479 F.3d at 502 (internal citation omitted).

In defense of the court's ruling, the government points to cases in which this court has held that evidence of prior drug transactions between parties to the charged crime is admissible because it explains the genesis of the parties' relationship. See *McLee*, 436 F.3d at 759-60; *United States v. Ward*, 211 F.3d 356, 362 (7th Cir. 2000). But these cases are distinguishable because they are conspiracy cases; Moore was on trial for a single sale. This court has criticized the admission of evidence concerning prior drug transactions where the defendant was charged only with a single delivery because "[e]vidence of any prior unrelated drug sales was simply not necessary to complete the story of the single delivery on trial." *Simpson*, 479 F.3d at 501. The disputed evidence in this case showed only that Moore had a propensity to deal crack, and therefore the district court abused its discretion by admitting it.

Even if the court erred in admitting the evidence of the prior drug transactions, however, the error was harmless if Moore's "substantial rights" were not affected. FED. R. CRIM. P. 52(a); *United States v. Jones*, 389 F.3d 753, 758 (7th Cir. 2004) (erroneous admission of evidence in violation of Rule 404(b) harmless), *vacated on other grounds,* 545 U.S. 1125 (2005); *James*, 464 F.3d at 711 (erroneous admission of evidence under inextricably intertwined doctrine was harmless under plain error standard). Although this case was closer than some, the jury was entitled to believe Warren's testimony that Moore was the one who gave him the crack. We cannot conclude on this record that "in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *United States v. Owens*, 424 F.3d 649 (7th Cir. 2005). Moore's principal argument for finding that the error mattered is that Warren's testimony was not supported by more corroborating evidence (no hand-to-hand transaction was observed; the lone adverse witness was motivated by a desire to avoid prison) and because the videotape captured another person who might have been the supplier. Given the government's weak case, Moore says, the jury might have convicted him based solely on an assumption that if he had dealt with Warren before, he had just done so again.

Even if the evidence against Moore was not, as the government likes to say, overwhelming, it was nonetheless substantial. Warren testified that he bought the crack from Moore, and Warren withstood thorough cross-examination about his motive to lie. Video evidence captured Moore and Warren meeting at the car wash, Moore taking the cash from Warren, and the two driving around the block. Moreover, the government candidly acknowledged the weaknesses in its case – it admitted during closing argument that there was no visual evidence of Moore's handing drugs to

Warren, that Warren had contact with another person who might have given him the crack, and that Warren had a motive to lie. Finally, at the end of the trial the jury was instructed to consider the evidence of prior drug sales for a limited purpose only, and this court has consistently viewed such limiting instructions as minimizing the prejudicial effect of this kind of evidence. *See United States v. Strong*, 485 F.3d 985, 991 (7th Cir. 2007), citing *United States v. Whitlow,* 381 F.3d 679, 686 (7th Cir. 2004), and *United States v. Rollins,* 301 F.3d 511, 520 (7th Cir. 2002); *but see United States v. Jones*, 455 F.3d 800, 811 (7th Cir. 2006) (Easterbrook, J., concurring) (questioning the value of limiting instructions in reducing prejudicial effect of prior bad acts evidence, because telling juries not to infer that "someone who violated the law once is likely to do so again is like telling jurors to ignore the pink rhinoceros that just sauntered into the courtroom").

Because we find that any error that was committed here was harmless, we AFFIRM the judgment of the district court.