In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1718

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDDIE LEE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 10 CR 30058 — **Richard Mills**, *Judge.*

ARGUED MAY 22, 2013 — DECIDED AUGUST 1, 2013

Before FLAUM, ROVNER, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* A jury convicted defendant-
appellant Eddie Lee of conspiring to distribute and possessing
with the intent to distribute 50 or more grams of a substance

containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The district court ordered him to serve a prison term of 20 years. Lee appeals, contending that the district court abused its discretion by admitting into evidence at trial proof that he had previously been convicted of possessing cocaine base. *See* Fed. R. Evid. 404(b). We agree and reverse.

## I.

Lee was named in a 2010 indictment along with co-defendants Darin Hurt, Anthony Clardy, and Christopher Holcomb. Hurt was a retail seller of crack cocaine in Springfield, Illinois, who was assisted on occasion by Holcomb and Clardy. It was the government's theory that Lee was one of Hurt's suppliers. Drug enforcement agents were led to Hurt, Holcomb, and Clardy by Roderick Pickett, one of Hurt's customers. Pickett assumed the role of a confidential informant and made two controlled purchases of crack cocaine from Hurt in the Fall of 2009 that were recorded on video. Those purchases, along with the discovery of a distribution-sized quantity of crack cocaine in a car that Lee was driving in December 2009, led to the eventual arrest and indictment of Lee, Hurt, Clardy, and Holcomb.

Of the four defendants, only Lee went to trial. Lee initially pleaded guilty to both the conspiracy and possession charges, on the understanding that the more favorable statutory penalties put into place by the Fair Sentencing Act of 2010, 124 Stat. 2372 ("FSA"), would apply at his sentencing. (The district court in fact had applied the FSA in sentencing Holcomb before Lee pleaded guilty.) But, less than a month after Lee

pleaded guilty, this court ruled in *United States v. Fisher*, 635 F.3d 336 (7th Cir.), *reh'g en banc denied over dissent*, 646 F.3d 429 (7th Cir. 2011), that the FSA did not apply to offenses committed prior to its enactment. The Supreme Court ultimately ruled otherwise the following year, *Dorsey v. United States*, 132 S. Ct. 2321 (2012), but by that time Lee had been permitted to withdraw his guilty plea and had proceeded to trial–twice.

Lee's first trial, in June 2011, ended with the district court's declaration of a mistrial after the jury was unable to reach a verdict. When Lee was retried the following month, the jury found him guilty on both counts of the indictment in which he was named: Count One, charging that Lee conspired with Hurt to distribute and to possess, with the intent to distribute, more than 50 grams of crack cocaine, and Count Four, charging Lee with possessing, with the intent to distribute, more than 50 grams of crack cocaine.

With the exception of the Rule 404(b) evidence admitted at Lee's second trial, the proof was essentially the same at both trials. Hurt was the government's principal witness, describing each of the transactions in which he had engaged with Lee. Beyond Hurt's testimony, the evidence against Lee was, in good measure, circumstantial. Phone records established telephonic contact between Lee and Hurt consistent with the timing of the transactions Hurt recounted: for example, Hurt testified that Lee typically called him when he was on his way to Springfield to make a delivery of cocaine, and phone records confirmed that the two men were in telephonic contact prior to the deliveries Hurt described. None of the telephone calls were recorded, however. Moreover, although Pickett was wired during his transactions with Hurt, Lee was not present during

those transactions, and no other witness was privy to Hurt's interactions with Lee.

Hurt had begun selling crack cocaine in or about 2006. Hurt was paralyzed from the shoulders down and was otherwise relying on disability payments for his income. Hurt's brother Clardy typically helped him prepare and package cocaine for distribution to his customers; Holcomb, as we have noted, also helped Hurt with the sales. At first, Hurt's supplier was Lee's cousin, Mikey Smith. After Smith was jailed in 2007, Hurt turned to other suppliers. Lee eventually became one of them. Hurt had known Lee since 2002, but so far as the record reveals, Lee had not sold crack cocaine to Hurt prior to the 2009 sales that Hurt recounted at trial.

Hurt described for the jury four transactions with Lee that occurred in the Summer and Fall of 2009. In late July, Lee sold 17 ounces of crack to Hurt at a price of $900 an ounce. Lee fronted the cocaine to Hurt; Hurt then sold the cocaine to customers over the course of a day or two with Holcomb's help; and then Hurt paid Lee from the proceeds. Two weeks later, in early August, Lee provided a 13-ounce quantity to Hurt for the same price per ounce and was again paid after Hurt and Holcomb sold the cocaine to Hurt's customers. Hurt testified that following this second transaction, he turned over to Lee all of the proceeds from his sales, leaving nothing for himself.

On the morning of September 1, 2009, Lee dropped off a nine-ounce quantity of crack to Hurt at his home. Within a day, Hurt and Holcomb had sold the cocaine and paid Lee. Among Hurt's customers that day was Pickett, who recorded his

purchase in his capacity as a confidential informant. When Pickett asked Hurt when his supply had arrived, Hurt told him he had gotten it that morning. Pickett purchased a half-ounce of crack from Hurt at a price of $600; Clardy assisted Hurt with the sale. Hurt testified that after he had disposed of all of the cocaine supplied by Lee, he once again turned all of the proceeds over to Lee, with no profit remaining for himself.

Pickett made another controlled purchase of cocaine from Hurt on September 17. Pickett tried to make the purchase a day earlier, but Hurt told him he had no drugs on hand to sell him. On the following morning (the 17th), Lee delivered four ounces of crack cocaine to Hurt. Hurt and Holcomb again disposed of that quantity in a day's time. Pickett was among their customers: he purchased an ounce of crack for a nominal price of $1200, and then Hurt then kicked back $100 of the purchase price to him. Although Lee was not present in Hurt's home, where Pickett made the purchase, the camera that Pickett was wearing captured Lee sitting in the yard of another house that Hurt owned just down the alley from Hurt's residence; and Lee's Ford Taurus was also parked in the vicinity. Hurt acknowledged on the witness stand that Lee's cousin Poncho was renovating the other house for Hurt (Lee, in fact, was Hurt's contact for Poncho); and no surveillance agent was ever able to see, let alone photograph, Lee transacting narcotics business with Hurt. As he walked back to his own vehicle following the transaction with Hurt, Pickett had a brief on-camera conversation with Lee during which chess and house-siding, but not narcotics, were mentioned.

On December 2, Lee was on his way to Springfield when he was pulled over on U.S. Interstate 55 by McLean County

Sheriff's Deputy Jason Tuttle. The traffic stop was not pre-planned and had nothing to do with the investigation of Hurt and Lee; Tuttle stopped Lee because the registration on the Honda Accord he was driving had been suspended. Lee told Tuttle that the car belonged to his goddaughter. The deputy led a drug-detecting dog around car, and the dog alerted at the passenger door. On the strength of the dog's alert, the deputy and backup officers proceeded to conduct a fairly thorough search of the car. While looking through the trunk, which Tuttle described as "loaded down" with "just a lot of junk, really," R. 179 at 74, one of the deputies lifted the spare tire, without going so far as to remove it, but did not see anything there. The search produced no drugs. The car was impounded due to the suspended registration; and Lee was dropped off at a highway rest area. Lee called Hurt to advise him that he had been pulled over and asked him for a ride.

Lee was stopped a second time later that same day. This stop was made as part of the narcotics investigation. After Lee called Hurt, Hurt had called Pickett and asked Pickett to pick up Hurt and then Lee. Before he picked up Hurt, Pickett called drug enforcement agents and told them he was on his way to pick up Hurt and Hurt's supplier. After Pickett had picked up both men, an officer stopped the car on the premise of a vehicle code violation and, after confirming the identities of the men, searched the car. He found no drugs in the car and let the men go with a warning. In the course of the stop, however, Lee volunteered that he had been stopped earlier that day and that his car had been towed. That disclosure led agents to the tow yard where the Honda Accord had been taken.

A second search of the car at the tow yard proved more fruitful than the first. At the yard, agents walked a narcotics dog around the car and, once again, the dog alerted to the passenger door. Officers then obtained a warrant to search the vehicle. The ensuing search, which took place more than eight hours after Lee first was stopped on the Interstate, produced a wrinkled black plastic bag that was located behind the spare tire. A latent fingerprint matching Lee's would later be discovered on the outside of that bag. Inside of the black plastic bag was a clear Ziploc bag containing eight smaller bags, seven of which contained one-ounce quantities of crack cocaine and the last of which contained a smaller quantity of powder cocaine. Collectively, the bags contained 210 grams of crack cocaine, worth approximately $21,000. It was that cocaine which was the basis for the charge in Count Four of the indictment alleging that Lee possessed with the intent to distribute in excess of 50 grams of crack cocaine.

Lee presented no witnesses, but through cross-examination and argument, the defense did manage to poke holes in the government's case. Naturally, Lee's counsel pointed out to the jury that, in the absence of evidence verifying Hurt's testimony as to his transactions with Lee, the prosecution's case depended to a significant degree upon the believability of Hurt's testimony. Hurt had credibility issues: besides being a cocaine dealer who stood to benefit from his testimony against Lee, Hurt was a regular and substantial user of marijuana who smoked four to five "blunts" daily, and in fact could be seen sharing a blunt with Pickett on the video recording of the September 1 transaction. Hurt also helped the defense when he agreed on cross-examination that he "d[id]n't remember much

of anything at all about th[e] supposed occasions" on which he had purchased cocaine from Lee and that "it was the government that helped [him] remember those occasions … ." R. 180 at 143. Pickett had issues of his own: aside from being a paid informant, he disclosed on the witness stand that he had decided to expose Hurt's drug-dealing after he surmised that Hurt had told police where to find him on an outstanding warrant. The discovery of cocaine in the Honda Accord that Lee was driving on December 2 was, of course, damning by itself; but the defense made much of the fact that the cocaine was not discovered until many hours after Lee was pulled over and the car had been sitting in the tow yard for the better part of the day.

As we have said, the first jury that heard this evidence was unable to reach a verdict on either the conspiracy or the possession charge against Lee.

At the outset of the second trial, the government moved pursuant to Rule 404(b) to admit evidence that, in 2004, Lee had been convicted of possessing more than 15 but less than 100 grams of cocaine. The government contended that the prior conviction was probative of Lee's knowledge, intent, and absence of mistake. In the government's view, Lee's defense at the first trial demonstrated that those matters were in dispute: the defense had denied that Lee knew that there was cocaine in the car he was driving on December 2, disclaimed any intent to distribute cocaine, and had argued that the cocaine would have been found during the first, roadside search of the car if in fact it was there at that time, implying that someone else had put the cocaine in the trunk of the car after it was impounded. Evidence that Lee had previously engaged in cocaine-related

activity "tend[s] to show that [Lee] was familiar with the cocaine [business] and was not some innocent bystander mistakenly caught up by overzealous law enforcement." R. 179 at 5 (quoting *United States v. Wilson*, 31 F.3d 510, 515 (7th Cir. 1994) (in turn quoting *United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir. 1994))); *see also United States v. Chavis*, 429 F.3d 662, 668 (7th Cir. 2005). Lee opposed the motion. His attorney denied having suggested that the drugs in the car had been planted, although the clear suggestion in the first trial as well as the second was that the cocaine was not present in the trunk of the car at the time of the first (roadside) search. *See* R. 176 at 47; R. 181 at 110-11. More to the point, she contended that Lee's prior conviction was in truth being offered "to show some kind of propensity and [to] tip the balance for a jury in this case, because they were unable to get the jury on the evidence that they submitted the first time to convict[ ] Mr. Lee." R. 179 at 9. Counsel added, finally, that the prior conviction, for simple possession of crack cocaine, was not similar to or close enough in time to the charged offense to qualify for admission under Rule 404(b).

After hearing the parties' arguments, the court granted the government's motion and admitted the evidence without explanation: "The bottom line is that the government's motion in limine is going to be allowed and the defendant's motion in limine is going to be denied regarding the Rule of Evidence 404(b). That will be permitted." R. 179 at 15. In his opening statement, the government's counsel informed the jury that it would hear evidence that Lee had previously been convicted of possessing crack cocaine; and counsel explained that Lee's conviction "will be presented not to show that just because he

did it before means he did it this time, it will be presented to you for the purpose of establishing his intent to distribute the crack cocaine that he possessed, his knowledge that that crack cocaine was in the trunk and not there by happenstance, and to prove that this was not just some mistake that Mr. Lee was at the wrong place at the wrong time." R. 179 at 58. Subsequently, during the government's case, the court took formal notice of Lee's prior conviction and instructed the jury that it could consider the conviction on the three subjects the government had identified – knowledge, intent, and absence of mistake – and for no other purpose. R. 180 at 256-57. In its closing argument, the government reiterated the relevance of the conviction to Lee's contention that he had nothing to do with the cocaine discovered in the car:

> [T]hat is relevant to show his knowledge that cocaine is a controlled substance. It is relevant to show his intent to possess cocaine at a later date. And it is surely relevant to show that he's not just some fool caught up in overzealous law enforcement. That he's not just some person in the wrong place at the wrong time.

R. 181 at 133.

At the conclusion of the second trial, the jury convicted Lee of both the conspiracy and possession charges. Anticipating the possibility that the Supreme Court might deem the revised statutory penalties specified by the 2010 Fair Sentencing Act applicable to defendants, like Lee, who committed narcotics offenses prior to the FSA's enactment but were sentenced after the statute came into effect, the court asked the jury to com-

plete a special verdict form making findings that were pertinent to both the pre- and post-FSA sentencing ranges. As relevant to the ranges specified by the FSA, the jury found that the conspiracy in this case involved more than 280 grams of crack cocaine. That finding triggered a minimum statutory term of 10 years in prison under the FSA. *See* § 841(b)(1)(A)(iii). Furthermore, because Lee had a prior felony narcotics conviction, the mandatory minimum prison term was increased to 20 years. *See* 21 U.S.C. §§ 841(b)(1)(A), 851[1]. The district court ordered Lee to serve the minimum statutory term of 20 years.

## II.

Lee's lead argument on appeal, and the only one we need reach, is that the district court abused its discretion in admitting into evidence his 2004 conviction for the possession of crack cocaine. Although that evidence was nominally admitted solely for purposes identified as permissible by Rule 404(b),

---

[1] Lee has separately argued in this appeal that once he successfully completed the term of supervision to which he was sentenced on his 2004 conviction, the conviction was dismissed as a matter of Illinois law, and therefore it could not trigger the enhanced statutory minimum term of imprisonment under section 841(b)(1)(A). However, Lee did not make this same point in opposing the admission of his prior conviction at trial pursuant to Rule 404(b). We have found it unnecessary to decide whether Lee's prior conviction ceased to *be* a conviction once Lee successfully completed his supervision. For the reasons we articulate below, assuming that the conviction remained cognizable as such for purposes of Rule 404(b), the district court nonetheless abused its discretion in allowing the conviction into evidence. And because we conclude that the erroneous admission of the prior conviction entitles Lee to a new trial, we need not consider whether the conviction was cognizable for purposes of the enhanced penalties specified by section 841(b)(1)(A).

Lee argues that his prior conviction actually was probative of his knowledge and intent, and the absence of mistake, only in the sense that it established his propensity to commit cocaine-related offenses – the very purpose for which Rule 404(b) forbids the admission of prior wrongful acts. After reviewing the trial record, we are persuaded that he is correct.

Rule 404(b) prohibits evidence of a defendant's other crimes, wrongs, or acts as proof of his propensity to commit the charged offense, but allows such evidence for other purposes, including (but not limited to) motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Our precedents have consistently stated that evidence of a defendant's uncharged, wrongful act must satisfy four criteria in order to be properly admitted:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged;
>
> (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue;
>
> (3) the evidence is sufficient to support a jury finding that the defendant committed the other act; and
>
> (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*See United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir. 1984), *overruled in part on other grounds by Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496 (1988)*; see also*, *e.g., United States v. Gulley*, 2013 WL 2991794, at *5 (7th Cir. June 17, 2013); *United States v. Howard*, 692 F.3d 697, 703 (7th Cir. 2012); *United States v. Vargas*, 689 F.3d 867, 875 (7th Cir.), *cert. denied*, 133 S. Ct. 804 (2012).

Our recent decision in *United States v. Miller*, 673 F.3d 688, 697 (7th Cir. 2012), emphasizes the particular importance of the first and fourth of these factors in the Rule 404(b) analysis.

> The arguments presented in this case suggest that admission of prior drug crimes to prove intent to commit present drug crimes has become too routine. Closer attention needs to be paid to the reasons for using prior drug convictions – to lessen the danger that defendants like Miller will be convicted because the prosecution invited, and the jury likely made, an improper assumption about propensity to commit drug crimes.

*Id.* at 696.

Miller was charged with, *inter alia*, possessing with the intent to distribute in excess of five grams of crack cocaine and with possessing a gun in furtherance of a drug crime. These charges stemmed from the discovery, in 2008, of crack cocaine, packaged for distribution, in one of the bedrooms of a house that Miller shared with others. Although personal effects belonging to Miller were found in that same bedroom, Miller contended that in fact he was not staying in that bedroom and that the cocaine was not his. Pursuant to Rule 404(b), the

district court admitted into evidence his prior conviction for possessing cocaine with the intent to distribute in 2000 as evidence of his intent to distribute cocaine some eight years later with respect to the case on trial. We concluded that although Miller's prior conviction had nominally been admitted for an appropriate purpose–to show Miller's intent–in context it was really only relevant as proof of his propensity to distribute drugs, the very purpose that Rule 404(b)(1) declares off-limits:

> Here, Miller claimed that the drugs found in the shoe box and on the bed were not his, that he was in effect an innocent bystander. Witnesses told the jury about Miller's arrest and conviction for dealing drugs in 2000. The government defends the use of that evidence on the ground that it showed his intent to distribute drugs in 2008. How, exactly, does Miller's prior drug dealing conviction in 2000 suggest that he intended to deal drugs in 2008? When the question is framed this way, the answer becomes obvious, even though implicit: "He intended to do it before, ladies and gentlemen, so he must have intended to do it again." That is precisely the forbidden propensity inference.

673 F.3d at 699.

*Miller* cautions judges evaluating evidence proffered under Rule 404(b) to consider first the extent to which a defendant has genuinely placed at issue the specific matter that the evidence is being offered to establish. *Id.* at 696-97. Simply

because a subject like intent is formally at issue when the defendant has claimed innocence and the government is obliged to prove his intent as an element of his guilt does not automatically open the door to proof of the defendant's other wrongful acts for purposes of establishing his intent. *Id.* at 697. The court still must weigh the probative worth of the evidence against its potential for prejudice: thus, for example, "intent becomes more relevant, and evidence tending to prove intent becomes more probative, when the defense actually works to deny intent, joining the issue by contesting it." *Id.*; *cf. id.* at 696 ("Miller has never argued that the bags of drugs–some of which had price tags attached–were not intended for distribution."); *id.* at 698 ("[Miller] did not argue that he intended to consume rather than sell the drugs, or that he lacked knowledge of cocaine or how to sell it."). Conversely, when the defense theory of the case has nothing to do with intent–when, for example, the defendant flatly denies that the drugs were his, as Miller did–other crimes evidence offered to establish his intent will have much less relevance, such that its probative worth is more likely to be outweighed by the inherent risk of prejudice that such evidence poses to the defendant. *Id.* at 698.

Second, assuming that the proffered other-acts evidence is relevant on a contested point, the court must consider the chain of logic by which the jury is being asked to glean the defendant's knowledge, intent, etc. from proof of his prior misdeeds. *Id.* at 697-98. "Unless there is a persuasive and specific answer to th[at] question … then the real answer is almost certainly that the evidence is probative only of propensity." *Id.* at 699. This turned out to be true in *Miller* when we considered how proof of Miller's prior narcotics conviction bore on his intent to

commit the charged offenses: practically speaking, the only way in which the conviction was probative of Miller's later state of mind was in the sense that it established his history of narcotics dealing and thus the likelihood that he was repeating his prior behavior as charged in the present case. *Id.* at 699, 700.

After finding that Miller's prior conviction had been improperly admitted pursuant to Rule 404(b), we went on to conclude that the error prejudiced him. We stated that the relevant inquiry in that regard was "whether an average juror would find the prosecution's case significantly less persuasive without the improper evidence." *Id.* at 700 (citing *United States v. Hicks*, 635 F.3d 1063, 1073-74 (7th Cir. 2011)). Although the government's case against Miller was strong, it was not overwhelming. *Id.* at 700-01. Miller had mounted a "vigorous defense," and the government in turn had "attacked the credibility of the defense witnesses and the defense theory," *id.* at 701. "By piling Miller's prior drug conviction on top of what was otherwise a strong case, the government distracted the inquiry from what happened in April 2008 and invited the jury to decide guilt for the wrong reasons." *Id.* We therefore reversed Miller's conviction and remanded for a new trial.

With *Miller* as our template, we turn to the factual context in which Lee's prior drug conviction was introduced against him at trial. His conviction was formally offered as proof of his knowledge and intent, and lack of mistake. We consider first whether and in what way there was a genuine dispute as to any of these subjects at trial, such that the prior conviction was truly relevant. And we next consider the chain of reasoning by which the jury was invited to infer Lee's knowledge, intent,

and absence of mistake from his prior conviction. For all of the same reasons that we articulated in *Miller*, we conclude that Lee's prior conviction was improperly admitted in this case, because it was probative on these topics primarily if not exclusively in the sense that it demonstrated his propensity to commit narcotics offenses.

We begin by noting that the district court, in admitting the evidence of Lee's prior conviction, did not engage in an on-the-record evaluation of the purposes for which the government offered the evidence, the relevance of Lee's conviction to those purposes, or of the prejudice posed by the conviction as balanced against its probative worth. This is unfortunate for more than one reason. First, a statement of the judge's rationale always facilitates our appellate review of discretionary decisions like the decision to admit or exclude evidence. *See, e.g., United States v. Knope*, 655 F.3d 647, 658-59 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 1060 (2012). Having such a record is especially important in the Rule 404(b) context, given that the trial judge is necessarily much closer to the case, the evidence, and the parties' respective theories, and is therefore better able to evaluate the ramifications of the proffered evidence and to determine whether and why that evidence is relevant without posing an undue risk of prejudice to the defendant. *United States v. Beasley*, 809 F.2d 1273, 1278-79 (7th Cir. 1987). Second, articulating the rationale for admitting other-acts evidence also helps to ensure that the district judge is genuinely exercising his discretion and observing the limits of Rule 404(b) by thinking through the relevance of and the potential prejudice posed by the proffered evidence. Our cases have long stressed the need for careful evaluation of other-acts evidence. *See, e.g.,*

*United States v. Phillips*, 401 F.2d 301, 305-06 (7th Cir. 1968); *United States v. DeCastris*, 798 F.2d 261, 265 (7th Cir. 1986); *Beasley*, 809 F.2d at 1279; *United States v. Nagib*, 56 F.3d 798, 806-07 (7th Cir. 1995); *United States v. Ciesiolka*, 614 F.3d 347, 357-59 (7th Cir. 2010); *United States v. Albiola*, 624 F.3d 431, 438-39 (7th Cir. 2010); *Knope*, 655 F.3d at 658-59. As we stated in *Beasley*:

> [T]here must be a principled exercise of discretion. The district judge must both identify the exception that applies to the evidence in question and evaluate whether the evidence, although relevant and within the exception, is sufficiently probative to make tolerable the risk that jurors will act on the basis of emotion or an inference via the blackening of the defendant's character … .

809 F.2d at 1279; *see also DeCastris*, 798 F.2d at 265 ("This delicate balance of probative force against undue prejudice calls for all of the judge's skills. The judge must enter the mind of the jurors and appreciate how a piece of evidence fits … ."). Certainly the limiting instruction that the court gave in this case identifies the purposes for which it admitted Lee's prior conviction into evidence. *See United States v. Wright*, 943 F.2d 748, 751 (7th Cir. 1991) (citing *United States v. Binkley*, 903 F.2d 1130, 1136 (7th Cir. 1990), *abrogated on other grounds by Abuelhawa v. United States*, 556 U.S. 816, 129 S. Ct. 2102 (2009)). But, as our decision in *Miller* emphasizes, identifying a facially valid purpose for the admission of the evidence is where the court's duty begins, not where it ends. 673 F.3d at 696-97. When one looks beyond the purposes for which the evidence is being offered and considers what inferences the jury is being asked

to draw from that evidence, and by what chain of logic, it will sometimes become clear, as it did in *Miller*, that despite the label, the jury is essentially being asked to rely on the evidence as proof of the defendant's propensity to commit the charged offense.

Lee's defense was quite similar to Miller's: although the cocaine was discovered in the trunk of a car that Lee was driving, Lee maintained that the car was not his (it was not registered in his name) and Lee posited that the cocaine was not his either. In effect, Lee, like Miller, was claiming to have been an innocent bystander. Thus, Lee was not placing his knowledge or intent into specific dispute by contending, for example, that he knew there was an off-white, chunky substance in the car but he did not realize that was what crack cocaine looked like, or that he knowingly possessed the cocaine but solely for his own personal use and with no intent to distribute it. *See Miller*, 673 F.3d at 696, 698; *Hicks*, 635 F.3d at 1070; *cf. United States v. Harris*, 587 F.3d 861, 865 (7th Cir. 2009) (defendant admitted holding drugs, but contended that he did so for someone else with no intent to distribute drugs himself). Nor was Lee claiming to have made a mistake in the usual sense. He was not suggesting, for example, that he had grabbed someone else's bag (in which the cocaine was discovered) and put it into the trunk of the car thinking it was his. Lee effectively did posit that he was in the wrong place at the wrong time, as the government points out – that is the gist of any innocent bystander defense – but he did not contend that he took some action inadvertently or unwittingly. *See Hicks*, 635 F.3d at 1070 ("Hicks never contended that he did not know that the substance for sale was crack cocaine or any other

controlled substance."); *Chavis*, 429 F.3d at 673 (Cudahy, J., concurring) (citing "I thought they [the drugs] were cough drops" as an example of a defense of mistake). To the extent the government was offering the evidence in order to prove a lack of mistake on *its* part, rather than Lee's, this was not a proper ground for admission under Rule 404(b). As the Sixth Circuit has explained:

> [A]bsence of mistake "on behalf of the government" is not a legitimate basis to admit other acts evidence under Rule 404(b). Rather, it is a restatement of the primary reason for which the evidence is not admissible; that is, to suggest that the defendant is guilty (the government is not mistaken) because he committed the same or other crimes before.

*United States v. Merriweather*, 78 F.3d at 1070, 1077 (6th Cir. 1996); *see also United States v. Webb*, 548 F.3d 547, 548 (7th Cir. 2008) ("As for 'absence of mistake': how does a conviction show this *except* via the prohibited inference that someone who distributes drugs once is likely to do it again?") (emphasis in original).

So in all three respects–knowledge, intent, and absence of mistake – the 404(b) evidence had limited relevance (and in the case of mistake, none) to begin with. Lee did not pursue the type of defense which would have raised particular questions–about what he knew, what his purpose was, and whether his proximity to the cocaine was inadvertent–that his prior cocaine conviction might help the jury to answer. Certainly, by denying that he had anything to do with the cocaine, Lee

required the government to prove each and every element of the charged offenses, among them that Lee knowingly possessed cocaine with the intent to distribute. But as we emphasized in *Miller*, the government's routine obligation to establish something like a defendant's intent does not automatically open the door to Rule 404(b) evidence. 673 F.3d at 697. A court still must consider not only the extent to which a particular subject is genuinely in dispute, but also whether and how the proffered evidence of a defendant's prior misdeeds sheds light on that subject. *Id.* at 697-99. It is to these questions which we now turn.

When we consider how Lee's prior conviction would have factored into the jury's evaluation of the charges in this case, there is a threshold point to be made about the nature of the prior conviction. As in *Miller*, Lee's prior conviction was offered to establish his intent. But, in contrast to *Miller*, Lee's prior conviction was for straight possession of crack cocaine, not possession with the intent to distribute. That being the case, it is not obvious how the prior conviction would shed light on Lee's intent. *Miller* recognizes that a prior conviction for possession with the intent to distribute might help to show that his later intent vis-à-vis the controlled substance in question was likewise to distribute it rather than to keep it for his personal use. 673 F.3d at 698; *see also Hicks*, 635 F.3d at 1070; *Chavis*, *supra*, 429 F.3d at 668 (citing *United States v. Jones*, 389 F.3d 753, 757-58 (7th Cir. 2004), *judgment vacated on other grounds*, 545 U.S. 1125, 125 S. Ct. 2948 (2005), and *United States v. Puckett*, 405 F.3d 589, 596 (7th Cir. 2005)). Lee's prior conviction for possession only does not serve that purpose. Perhaps there is another chain of logic by which it might shed light on

his intent. But if so, the government never articulated it; the government simply argued, without elaboration, that the prior conviction established his intent five years later. This alone raises the possibility that the real relevance of Lee's prior conviction lay in its proof of his propensity to commit cocaine-related offenses. *See Chavis*, 429 F.3d at 673 (Cudahy, J., concurring).

And when we consider what the jury would have surmised about Lee's knowledge and intent, and the absence of mistake on the part of the government, from his prior conviction for the possession of crack cocaine, it becomes even more clear that his conviction was relevant only in the sense of establishing his propensity to engage in cocaine-related offenses. This is apparent from the government's argument below for the admission of Lee's prior conviction which has been reproduced in its appellate brief:

> Given the theory of defense, which included the suggestion that someone planted drugs in the Honda to frame Lee, the defendant's 2004 conviction shows that he was familiar with the cocaine business and was not some hapless fool mistakenly caught up in some overzealous law enforcement action.

Gov't Br. 26 (brackets and internal quotation marks omitted). This rationale makes plain that the jury was being invited to infer that because Lee was involved with crack cocaine before, he must have been so on this occasion as well. As we have discussed, Lee's defense did not specifically place his knowledge or intent in dispute by contending, for example, that he

did not know anything about how the cocaine trade worked or that while he possessed the cocaine he had no intent to sell it. *Cf. United States v. Hurn*, 496 F.3d 784, 787-88 (7th Cir. 2007) (defendant conceded knowledge there were drugs and cash in home he shared with others, but claimed not to know how much cash or what type of drugs and argued he had falsely confessed to ownership of drugs and cash out of fear of retaliation by true drug dealers)[2]. His was a defense of complete innocence which posited that he had nothing whatsoever to do with the cocaine discovered in the trunk of the car he was driving. So when the jury's attention was called to Lee's prior conviction, the inferences it was being asked to draw were not permissible inferences about his knowledge and intent – for example, that given his prior contact with crack cocaine, he knew what crack cocaine looked like or how it was packaged, or that a quantity as large as the one discovered in the trunk of the car would be one that he meant to distribute rather than consume[3]. Indeed, the government never suggested in argu

---

[2] The notion that Lee's prior conviction established his familiarity with the cocaine "business" is, in any case, a stretch, as the mere fact of his conviction for possession reveals nothing about how Lee came to possess the cocaine or what his purpose was.

[3] Nor was this a case in which code words associated with the narcotic trade were being used and the defendant claimed not to know what they meant, or the defendant was contending that his seemingly incriminating behavior (e.g., exchanging small plastic baggies for money at a street corner known for drug dealing) was in fact not evidence of his intent to distribute narcotics. *See United States v. Betts*, 16 F.3d 748, 757-58 (7th Cir. 1994), *abrogated on other grounds by United States v. Mills*, 122 F.3d 346, 349-50 (7th

(continued...)

ment to the jury what it might specifically infer about Lee's state of mind from his prior experience with crack cocaine. Instead, as the passage quoted above reveals, the jury was asked to infer from Lee's prior conviction that the drugs discovered in the trunk of the car were not planted there by the government, that he was not an unwitting driver who had no idea of what was in the trunk of the car, and that he was not an innocent person who was unjustly accused simply because he was discovered in the wrong place at the wrong time. Each aspect of this theory relies on Lee's conviction for what it tells us about his propensity to commit cocaine-related offenses. Thus: (1) It is unlikely that the government (or anyone else) planted the cocaine in the car, because Lee committed a cocaine-related offense before. (2) It is unlikely that he was ignorant of the cocaine in the trunk, because he has been convicted of possessing cocaine previously. (3) And it is unlikely that he was so unfortunate as to be a "hapless fool" in the wrong place at the wrong time, because he has possessed cocaine before and therefore likely was not an innocent bystander on this occasion. The fact that Lee had some familiarity with crack cocaine (if not the cocaine "business") as demonstrated by his prior conviction does not demonstrate that the cocaine was not planted in the trunk of the car, that Lee knew it was there, and that he was not an innocent bystander, *except* as evidence of his propensity to commit cocaine-related offenses: he did it before, so he must have done it this time as well. *See Miller*, 673 F.3d at 699; *Jones*, 389 F.3d at

---

[3](...continued)
Cir. 1997).

757; *United States v. Betts*, *supra* n.3, 16 F.3d at 758-59; *see also Chavis*, 429 F.3d at 673 (Cudahy, J., concurring) ("The prior convictions tell the jury in fairly blatant terms that a defendant is not to be believed when he says the drugs were not his because he has done it before.").

The limiting instructions that the court gave, both when the prior conviction was admitted into evidence and in the final jury instructions (and, for that matter, the prosecutor's own observation in opening statements that the conviction was not being admitted to show "that just because [Lee] did it before means he did it this time," R. 179 at 58), did not obviate the problem. The instructions advised the jury that it could consider Lee's prior conviction only insofar as it bore on Lee's "knowledge, intent, and absence of mistake," but as we have discussed, the only sense in which the conviction was probative of those subjects was as proof of his propensity to commit the charged cocaine offenses. The instruction therefore did nothing to prevent the jury from relying on the conviction for the very purpose that Rule 404(b)(1) declares off-limits.

As the government reminds us, a number of our decisions have cited the defendant's assertion of an innocent-bystander defense as a reason (if not *the* reason) why the admission of a defendant's prior bad acts was appropriate, *see*, *e.g.*, *United States v. Vargas*, 552 F.3d 550, 555 (7th Cir. 2008) (coll. cases); but our holdings in *Miller* and today in this case should make clear that neither the nature of a charge nor the nature of a defense automatically renders proof of a defendant's other crimes or bad acts admissible. *See also Hicks*, 635 F.3d at 1069-71. A court is always bound to consider how the proffered

evidence bears on the defense theory, and to exclude the
evidence if rather than supplying insight as to what the
defendant knew or what his purpose was, for example, its true
worth lies in exposing his inclination to commit the charged
offense and in that way to rebut a claim of innocence. At least
some of the cases in which we have cited an innocent-by-
stander defense as justification for the admission of Rule 404(b)
evidence may be distinguished on the ground that the evidence
was indeed probative of the defendant's knowledge or intent
in a non-propensity way. *See, e.g., Vargas*, 552 F.3d at 555-56
(prior instances in which defendant transported drugs con-
cealed under loads of produce in refrigerated semi-trailers was
probative of his knowledge that he was doing so on charged
occasion, despite his contention that he was unaware of secret
compartment in which drugs were found); *United States v.
Kreiser, supra*, 15 F.3d at 640-41 (evidence as to prior cocaine
transactions established that, as with charged transaction,
defendant worked with a partner, partner directed buyer to
retrieve cocaine from automobile linked to defendant, and
defendant "hovered in the background while awaiting the
completion of the deal"; evidence was therefore admissible to
establish defendant's knowledge, intent, and motive with
respect to charged transaction and to defeat any inference that
his proximity to cocaine on charged occasion was unwitting).
But to the extent that any of our prior cases conveyed an
impression that an innocent-bystander defense necessarily
opens the door to evidence of a defendant's prior bad acts, it
should by now be clear that any such impression is mistaken.
*Miller* renewed the admonition we made some 25 years earlier
in *Beasley*, that a district court must not only identify a purpose

for which Rule 404(b) authorizes the admission of other-acts evidence, but carefully evaluate whether and how the evidence is probative on that point and then assure itself that the probative value of the evidence is not substantially outweighed by the risk that the jury will consider the evidence as proof of the defendant's propensity to commit the crime charged. 809 F.2d at 1279. Perhaps some of our cases may be faulted for summarily approving the admission of prior-acts evidence to defeat a defendant's contention that he was an innocent bystander to the charged crime, without making clear how, other than by propensity, the prior acts tended to establish the defendant's knowledge and/or intent. But *Miller* has returned us to the path that *Beasley* and earlier courses charted. If, as in *Miller*, the prior acts are nominally admitted for a proper purpose, but in context are really probative only in the sense that they establish the defendant's propensity to commit the charged offense, then we will find the admission of the evidence to be erroneous.

For the reasons we have discussed, the district court therefore abused its discretion in allowing Lee's prior conviction into evidence. Rule 52(a) of the Federal Rules of Criminal Procedure demands that we disregard any error that did not affect Lee's substantial rights. This requires us to consider whether the error affected the outcome of the trial. *See*, *e.g.*, *United States v. Wysinger*, 683 F.3d 784, 803-04 (7th Cir. 2012) (quoting *United States v. Lee*, 413 F.3d 622, 627 (7th Cir. 2005)). More concretely, we must ask "whether an average juror would find the prosecution's case significantly less persuasive without the improper evidence." *Miller*, 673 F.3d at 700; *see also Hicks*, 635 F.3d at 1073-74.

We conclude that the government's case against Lee, absent proof of his prior conviction, would be significantly less persuasive to the average juror. To be sure, the government's case was strong. Hurt, Lee's customer and alleged co-conspirator, described the four instances in the Summer and Fall of 2009 in which he had purchased crack cocaine from Hurt for resale. His testimony was corroborated in part by records which established telephonic contact between Hurt and Lee in advance of these transactions, and, to a much lesser extent, by Pickett's recorded conversations with Hurt (as when Hurt told Pickett that his supplier had just delivered the cocaine to him). Moreover, in December 2009, Lee was stopped while driving a car in which over 50 grams of crack cocaine were later discovered–with his fingerprint on the wrapping. Nonetheless, as we have noted, there were openings in the government's case that the defense could and did exploit. Because Lee was never captured on tape discussing the sale of cocaine to Hurt or handing the cocaine to him, the case depended in large part on the credibility of Hurt's testimony. As Lee's co-defendant, Hurt suffered from the same credibility deficits of all accomplices turned prosecution witnesses, which Lee's attorney laid bare to the jury. He also had a drug problem. Hurt's testimony that he did not make money on two of his four transactions with Lee raised an eyebrow, given that he was in the cocaine business to supplement his income. More importantly, Lee's attorney wrested from Hurt concessions that he "d[id]n't remember much of anything at all about th[e] supposed occasions" on which he had purchased cocaine for Lee and that "it was the government that helped [him] remember those occasions … ." R. 180 at 143. For his part, Pickett admitted that

he initiated the investigation of Hurt and Lee out of a desire to seek vengeance for Hurt's perceived betrayal. And the December discovery of cocaine in the automobile Lee was driving proved a two-edged sword: despite a relatively thorough search of the car's trunk at the time of the stop, the cocaine was not unearthed until a more complete search hours later, opening the door to Lee's contention that the drugs were placed there by someone else after the car was towed. Additionally, the car Lee was driving was not registered to him, the trunk was jammed with miscellaneous clothing and other items, and Lee actually volunteered to the trooper who conducted the second stop that he had been stopped and the car towed earlier that same day, a disclosure that was arguably consistent with his proclaimed ignorance about what was in the trunk.

Certainly a reasonable jury could have convicted Lee on this evidence. But the evidence of his prior conviction, and the way in which the jury was invited to consider that conviction, gave the government substantial ammunition to defeat the defense suggestions that the drugs in the car had been planted there and that the government's case otherwise rested on a witness (Hurt) whose credibility was less than sterling. As we have discussed, the jury was urged to consider Lee's prior conviction as proof that he was not an innocent bystander discovered in the wrong place at the wrong time–in other words, the jury was being asked to evaluate the case based not on what the evidence showed Lee was doing at the time of the charged offense, but rather based on what his conviction five years earlier showed about his propensity to commit crack cocaine offenses. As we put it in *Miller*, "By piling [Lee's] prior

drug conviction on top of what was otherwise a strong case, the government distracted the inquiry from what happened in [2009] and invited the jury to decide guilt for the wrong reasons." 673 F.3d at 701. We cannot say that the admission of the prior conviction was harmless.

Lee is therefore entitled to a new trial. Lee has raised a number of other issues related to the special verdict form submitted to the jury and to his sentence. However, because we are reversing Lee's conviction, we find it unnecessary to decide these issues.

### III.

For the reasons set forth above, the district court abused its discretion in admitting Lee's prior conviction into evidence at trial pursuant to Rule 404(b), and the error was not harmless. We therefore REVERSE the judgment of conviction and REMAND the case to the district court for further proceedings consistent with this opinion.